IN THE MATTER OF THE GUARDIANSHIP OF NARA D. CARRICO, AN INCOMPETENT, BY MARGE BARDON, ON BEHALF OF NARA D. CARRICO *v.* REX E. BENNETT AND MERCANTILE NATIONAL BANK OF INDIANA.

[No. 3-873A102. Filed December 10, 1974. Rehearing denied January 7, 1975.]

*Foster, Stanish & Kouris,* of Hammond, for appellant.

*Richard P. Komyatte, Efron, Efron & Komyatte,* of Hammond, for appellees.

GARRARD, J.—Petition was filed to terminate the guardianship of Nara Carrico upon the ground that she was no longer incapable of managing her property and caring for herself. The trial court found that petitioner failed to establish the averments of the petition and entered judgment accordingly.

It is contended the decision is contrary to law and against the weight of the evidence. Appellant concedes, as petitioner, she had the burden of proof. *Shafer* v. *Shafer* (1914), 181 Ind. 244, 104 N.E. 507. The appeal is from a negative judgment, and assertion that the decision was against the weight of the evidence presents nothing for review. We will, however, determine whether the evidence was without conflict and led solely to the conclusion opposite that reached by the trial court. *Gariup* v. *Stern* (1970), 254 Ind. 563, 261 N.E.2d 578; *Houser* v. *Bd. of Comm'rs.* (1969), 252 Ind. 312, 247 N.E.2d 675.

The evidence was conflicting. Appellant's psychiatrist testified that in her opinion the ward was competent. However, non-expert evidence is allowable on issues of insanity or incompetence. *Johnson* v. *Culver* (1888), 116 Ind. 278, 19 N.E. 129; *Ramseyer* v. *Dennis* (1918), 187 Ind. 420, 119 N.E. 716. Thus, opinion testimony of a medical expert does not preclude the trier of fact from considering and weighing non-expert evidence when such a matter is in issue. *Klinger* v. *Caylor* (1971), 148 Ind. App. 508, 267 N.E.2d 848; *Dudley Sports Co.* v. *Schmitt* (1972), 151 Ind. App. 217, 279 N.E.2d 266.

Here petitioner's case in chief consisted solely of the psychiatrist's testimony. Neither the petitioner nor the ward

were called. (Both, however, appeared briefly as rebuttal witnesses.)

The ward's son, who was also guardian of the person for Mrs. Carrico, testified in opposition to the petition. While indicating that she had improved both physically and mentally since the inception of the guardianship, he testified that in his opinion she was incapable of handling her affairs. He supported this by relating that Mrs. Carrico was disoriented upon awakening in the morning, and that while she had good days, there were a number of days each month when she would be incompetent. He described numerous occasions when he could not locate her at St. Ann's Home, although she was not signed out. He described her memory failure and related her accusations that he was in collusion with the bank, the judge and respondent's counsel to steal her funds. He related her assertion that all private telephones were being tapped by the federal government. In addition, when Mrs. Carrico was called as a rebuttal witness, she was questioned by the court. She first asserted the guardianship was instituted by her son so he could get her property. She then conceded that he did not have her money, but maintained she had meant her furniture and clothing. When the court inquired why her son would want her clothing, she stated he had instituted the guardianship because he did not want to be bothered with her.

While such evidence may be susceptible to more than one ultimate inference, we cannot say it led solely to the conclusion that Mrs. Carrico was capable of managing her affairs and caring for herself. Indeed there was no direct evidence, other than the psychiatrist's opinion, to establish that she could. Accordingly, the decision may not be overturned on this ground.

Furthermore, as the evidence does not lead solely to the conclusion that Mrs. Carrico was *capable* of managing her property and caring for herself (despite her age or infirmity), we need not reach appellant's argument that mere old age or physical infirmity cannot sustain the guardianship. *Harvey*

v. *Rodger* (1924), 84 Ind. App. 409, 143 N.E. 8; *Perry* v. *Perry* (1940), 108 Ind. App. 93, 27 N.E.2d 133.

It is also urged that the trial court erroneously required appellant to negative the reasons for the original finding of incompetence rather than simply prove the ward competent at the time of hearing. Certainly, the latter proof is appropriate. *Cochran* v. *Amsden* (1885), 104 Ind. 282, 3 N.E. 934. However, from the record it also appears to have been the one applied, since on this issue the trial court advised petitioner she had the burden of establishing the relevant allegations of her petition, and the court expressly found that the averments of the petition had not been sustained.[1]

Appellant next complains of five evidentiary rulings made by the court.

Appellant's psychiatrist testified that she felt her own opinion was reinforced by a letter she had read from a Dr. Husted addressed to an attorney. Dr. Husted did not appear as a witness. Appellant attempted to introduce the letter in evidence. The exclusion of the letter as hearsay was proper.

Appellant objected to cross examination of the psychiatrist regarding the nature and effects of "cerebral hematoma". The psychiatrist had stated her opinion that Mrs. Carrico's original disability was organic rather than functional. Since direct examination attributed the original impairment to an organic disorder, it was proper to inquire on cross examination as to the witness' understanding of the nature and the effects of "organic brain illness." *Louisville, etc. R. Co.* v. *Wood* (1887), 113 Ind. 544, 14 N.E. 572; *Stoll, Exr.* v. *Rich, Exr.* (1929), 88 Ind. App. 639, 165 N.E. 67.

The psychiatrist was asked whether she thought it was "normal" for the ward to resent her son for instituting the guardianship if it were to be assumed that the ward was aware she had suffered an organic brain injury. It was undisputed

---

1. The petition asserted that the ward had been incompetent but had recovered and was then capable of managing her affairs.

that the injury had occurred. It was reasonable to infer that the ward was aware of it if she had regained her mental competence. The question was proper in testing the validity of the witness' opinion.

The psychiatrist was also asked two questions regarding whether her opinion would change or be affected if other facts were to be assumed. The complaint is that evidence of the truth of those facts was not produced. We agree that when counsel on cross examination poses questions to the witness asserting the existence of facts not in evidence, he ethically represents to the court and the parties that he will produce evidence of their existence if this is disputed. However, the court is invested with broad discretion regarding the cross examination of witnesses, and this is especially true of expert witnesses. *NIPSCO* v. *Otis* (1969), 145 Ind. App. 159, 250 N.E.2d 378; *Taylor* v. *Taylor* (1910), 174 Ind. 670, 93 N.E. 9. Here the appellant has failed to disclose how he was harmed by the particular questions asked or the answers given, and we cannot perceive his harm. Accordingly, appellant has failed to demonstrate harmful error regarding these questions. *Patrons, etc.* v. *School City of Kendallville* (1963), 244 Ind. 675, 194 N.E.2d 718; Ind. Rules of Procedure, App. Rule 15(D).

At the close of the hearing the court took the case under advisement. In due course the court entered its finding that the averments of the petition were not sustained. It was then ordered that the prayer of the petition be denied and that the respondents recover their costs. Thereafter, on the same day appellant filed her motion to correct errors, she also filed her petition to recover her attorneys' fees and expenses in the prosecution of the petition. The court overruled the motion to correct errors and summarily denied the petition for allowance of fees. Appellant's motion to correct errors addressed to this ruling alleges the ruling was contrary to law.

The applicable statute,[2] IC 1971, 29-1-18-48 (Burns Code Ed.) provides:

"Any person may file a petition on behalf of the ward, to have him adjudicated competent. If the court shall determine that the ward is competent, or, if still incompetent, that the proceeding was brought in good faith, the ward shall pay the expenses of such proceeding, otherwise the court shall give judgment therefor against the person filing such petition."

Appellant argues that the court must expressly find bad faith or the petitioner is entitled to recover the expenses of the proceeding, including attorney fees. Respondents urge that in the absence of a determination of competency or an express finding of good faith, no expenses are allowable.

Prior to enactment of the 1953 Probate Code the statute providing for termination of a guardianship upon the restoration of the ward's soundness of mind, simply provided that the expenses of the trial should be paid from the estate of the ward.[3] This provision was construed to provide for payment from the guardianship estate only where competency was restored. *Cochran* v. *Amsden, supra.*

On the other hand, the court in *State ex rel. Koch* v. *Vanderburgh Probate Court* (1965), 246 Ind. 139, 203 N.E.2d 525, while concerned with proceedings to establish a guardianship, expressly recognized the public necessity for insuring the ability of a person to contest his, or her, asserted incompetence:

"It is the policy that law should be liberally construed in guardianship proceedings to allow the presentation of a defense on behalf of the alleged incompetent who may be totally unable to make his own defense or to formally authorize a law firm to make such a defense. This policy finds support under analogous circumstances where the law declares a policy of liberality relative to attempts to restore the right to exercise control over property to the

2. The statute was further amended in 1973 to preclude filing a new petition within six months after a determination continuing the guardianship and to permit a ward to institute the proceedings.

3. Acts 1852, Ch. 14, § 10.

owners thereof. Burns' Ind. Stat. Anno. § 8-148 (1953 Repl.) provides in relevant part:

'Any person may file a petition on behalf of the ward, to have him adjudicated competent. . . .' " 246 Ind. 141, 203 N.E.2d 526.

We, accordingly, believe the term "expenses" as used in the statute includes reasonable attorneys' fees incurred in maintaining the proceeding. To hold otherwise under the statute at issue would greatly restrict the ability of one adjudged incompetent to seek a restoration of competency, since a ward was required to rely upon the availability of a good samaritan to employ counsel and institute the action.[4] Indeed, the 1973 amendment permitting the ward to personally prosecute the petition would also be substantially impaired if his, or her, ability to pay counsel depended entirely upon the restoration of control over his, or her, assets. This interpretation appears to be supported by the prior case law permitting recovery of the reasonable value of an attorney's services rendered during the guardianship from the estate of a ward after the ward's death. *Rautenkranz* v. *Plummer* (1920), 75 Ind. App. 269, 130 N.E. 435.

Conversely, the policy of the law to protect those incompetent to govern their own affairs extends to the profligate consumption of their estates for the payment of the expense of ill-founded, insubstantial and perhaps overly repetitive attempts to terminate their guardianships.

We believe these considerations were balanced by the legislative provision requiring recompense in the event competency was restored, or even if not restored, if the proceeding was maintained in good faith.

The burden is on the petitioner to establish her entitlement to expenses under the statute. However, since the statute mandates payment in the event the proceeding is brought in good faith, the trial court's action in this regard is subject to the regular stand-

4. Meharry v. Meharry (1877), 59 Ind. 257.

ards of appellate review. Since the potential entitlement to expenses exists apart from a finding that the petitioner has failed to establish her allegation of the ward's regained competency, the court's general finding that competency has not been established is not adequate to permit review. An express finding on the issue of good faith should be made.

Implicit to a disposition of the appeal is the question of whether appellant was foreclosed from asserting the issue by failing to present it at the hearing to determine whether the ward remained incompetent. Considering the continuing nature of guardianship proceedings, and the collateral character of the factual issue of good faith, we conclude the determination could be requested upon a post-hearing petition. To require that opposing contentions of the good or bad faith of the petitioner be litigated at the principal hearing may require the introduction of evidence inimical to a fair determination of the issue then principally before the court.

Since neither party at the hearing adduced evidence on the issue of good faith, on remand, hearing should be held to consider whether the petition was brought in good faith, and, if so, the amount to be awarded as reasonable expenses, including attorneys' fees.

We therefore affirm the judgment continuing the guardianship and reverse and remand the summary denial of the petition for expenses for further proceedings consistent herewith.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 319 N.E.2d 625.