**CITY OF GREENWOOD, Appellant,**

v.

**Virginia DOWLER, Appellee.**

**No. 1–985A217.**

Court of Appeals of Indiana,
First District.

May 19, 1986.

Rehearing Denied June 30, 1986.

---

James F.T. Sargent, Cynthia S. Emkes, Sargent & Emkes, Greenwood, for appellant.

Clifford G. Antcliff, Antcliff & Antcliff, Greenwood, for appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant, City of Greenwood, appeals a decision of the Johnson Circuit Court reversing a decision of the Greenwood Police Merit Commission (Commission) dismissing plaintiff-appellee, Virginia L. Dowler (Dowler), from the Greenwood Police Department.

We reverse.

## STATEMENT OF THE FACTS

The basis of the court's decision was that the decision of the Commission was not supported by substantial evidence, and was therefore arbitrary and capricious. The decision being fact sensitive, we set forth the facts in some detail.

Dowler, age 36, and the mother of two children, ages 11 and 14, had been a member of the Greenwood Police Department for about three years. A previous marriage of 16 years had terminated in 1983, but she remarried in 1984. Her new husband, David, had lost his business, and was then unemployed. The Dowler's youngest child disapproved of him. Dowler worked the 2:00 p.m. to 10:00 p.m. shift, the busiest and most stressful shift for a policeman. Dowler's marriage was in trouble. Divorce was discussed and Dowler had taken to drinking heavily, even to the point of having periodic blackouts. On the night of March 27, 1984, and the early morning hours of March 28, 1984, a lengthy quarrel between Dowler and David occurred, wherein divorce was again discussed. During this period she was again drinking heavily. After David and the children had gone to bed, Dowler went into the garage and started her car with the intent of committing suicide. She later turned the car off, but became unconscious from carbon monoxide poisoning. David awoke at 2:15 a.m., and found her lying at the rear of the car with her head near the exhaust pipe. She regained consciousness in the hospital, where she remained for three days. Dowler admitted the event was an attempted suicide.

A statement of charges was filed against Dowler alleging continued incapacity to perform her duties as a police officer because of emotional incapacity. At the Commission hearing, the above evidence was admitted without conflict. In addition, certain psychological reports were admitted.

Dr. Eugene G. Roach, M.D. submitted a report in which he described Dowler as being under stress from problems having to do with her marriage, career, and finances. He recited the absence of hallucinations and the absence of major depression, and stated that Dowler was within the range of normalcy. Although noting that her judgment and insight were only mildly impaired, he suggested that she undergo therapy. He concluded by stating "I see this patient's diagnosis as being one of loss

of impulse control on a reactive impulsive suicidal gesture to attract attention."

Karen Ladd, a Ph.D. candidate, also examined Dowler. Ladd recognized in Dowler depression, low self-esteem, psychological inertia, and low energy for coping with problems. Anger was noted as another major symptom. Ladd concluded by observing that "due to Mrs. Dowler's lack of coping skills and inner resources, stress, tension and frustration are common factors in her life."

Dr. Edward R. Strain, psychologist, recorded observations of intense stress resulting from financial difficulties and excessive drinking. At the time of the examination, July 9, 1984, Dr. Strain noted that Dowler's depression continued and that she "exhibit[ed] some of the insecurity one associates with an individual who has survived a suicide attempt yet still has persisting depression." He continued:

"At this time she does not appear to be defending against a psychotic break with reality. Her intellectual functioning appears generally efficient and she is organizing the outside world with effectiveness. Under stress, however, there is a possibility Mrs. Dowler could develop an agitation connected with the depressive component. Such agitation oftentimes will influence perception, negatively.

With respect to anger and hostility, it is felt the subject presently is repressing and denying these feelings. Such feelings within her are *not* seemingly unbridled or prone to rupture through in her behavior quickly, however.

Mrs. Dowler would be diagnosed as a depressive psychoneurotic, the depression being estimated as moderate in strength, and somewhat chronic.

RECOMMENDATIONS:

1. It would be this clinician's view that Mrs. Dowler is in need of care and that she should be treated as a typical suicidal survivor. This would imply a need for psychiatric assessment both from the standpoint of drug therapy and psychotherapy.

2. After a period of time, and with treatment, a medical opinion should be obtained to describe the impact of the treatment process on Mrs. Dowler's depression."

Dr. Frank J. Connelly, psychologist, also examined Dowler. In his report of July 11, 1984, after reciting Dowler's history and test results, stated:

"Based on Dr. Roach's evaluation of Mrs. Dowler while she was hospitalized, the M.M.P.I. [Minnesota Multiphasic Personality Inventory] which she took at Dr. Pritcherd's office, her current M.M.P.I., the history and interview which she provided me I see know [sic] reason to be concerned about Mrs. Dowler's ability to function in a responsible fashion as a sworn police officer. I certainly see no evidence that she currently represents a danger to herself or others, that her judgment is impaired or that her impulse control is inadequate nor do I have any reason to suspect that any of the circumstances would be true in the foreseeable future."

Dr. Roach's supplemented report of July 24, 1984, stated:

"Since there has been some disagreement with regards to psychologist evaluation of Mrs. Dowler, I would have to say that I believe that my initial evaluation of Mrs. Dowler is correct when I saw her when she was hospitalized. I see no reason at the current time, in light of the evidence of the M.M.P.I. and her interview with Frank J. Connolly and the Dexamethasone Depression Test being negative, why she cannot return to being on the Greenwood Police Force. I believe her judgment and insight is adequate and her impulse control is now under renewed ego constraints."

The Chief of the Greenwood Police Department, Charles E. Henderson, a 12 year veteran of the department, signed the charges. Testifying at the Commission's disciplinary hearing, Chief Henderson stated: (1) that police work in general is emotionally depressing, a job accompanied by strong tension and stress; (2) that Dowler

failed to cope with stress from her job and with stress from her private life; (3) that it is his opinion that anyone who attempts suicide is dangerous; (4) that he and the City of Greenwood are responsible for a policeman's action; and (5) that he was apprehensive about putting a person who is unable to cope with stressful situations back on the force, believing it to be a very serious and dangerous matter. The questioning of Chief Henderson concluded as follows:

"Q. And faced with Dr. Connelly and faced with Dr. Roach, M.D. and a psychiatrist, it's still your feeling that you don't want Virginia Dowler to come back to work?

A. It's my opinion that she should not come back to work due to the fact that she attempted to take her life, due to the fact of the probability that something could reoccur. It's my opinion, talking to Dr. Strain, based on some things he said, which to me—on questions that I asked him, that if you're suicidal, you're also homicidal. You're just reversing the trends, and those things bother me, and being the administrator of the police department, those things are things that you have to be very concerned about.

Q. And that's the reason it's in front of this Board?

A. Yes."

The Commission found that Dowler had a continuing incapacity because of her stress related attempted suicide. The Commission expressly found:

"That on July 9, 1984[,] Virginia L. Dowler was examined by Edward R. Strain, Clinical Psychologist[.] [H]e found in her history that she was under intense stress with her marriage, financial difficulties and had been drinking alcohol to some excess. A test analysis indicated that she has persisting depression and under stress there is a possibility of Virginia L. Dowler developing an agitation connected with the depressive component which could negatively influence perception. The general diagnosis was a [d]epressive psychoneurotic, the [d]epression being estimated as [m]oderate in [s]trength, and somewhat chronic.

That on July 11, 1984[,] she was examined by Frank J. Connelly, Clinical Psychologist. In his report Connelly found in the history that her relationship with her husband was strained and that she had been drinking very heavily to the point where she experienced blackouts on several occasions."

The Commission thereupon dismissed Dowler from the Greenwood Police Department. Upon her judicial appeal, the Johnson Circuit Court reversed the Commission's decision.

## ISSUES

The City has presented two issues for review. We have consolidated them into one issue for discussion which we state as follows:

Whether the decision of the Commission was based upon substantial evidence, and whether the trial court improperly weighed the evidence and substituted its judgment for that of the Commission.

## DISCUSSION AND DECISION

Judicial review of administrative actions is very limited. It is well settled in Indiana that discretionary decisions of administrative bodies, including police merit commissions, will not be reversed absent a showing that the decision was arbitrary and capricious, or an abuse of discretion, or otherwise not in accordance with the law. *Pope v. Marion County Sheriff's Merit Board* (1973), 157 Ind.App. 636, 301 N.E.2d 386. The trial court may not substitute its judgment for that of the administrative body, or modify a penalty imposed by that body in a disciplinary action without a showing that such action was arbitrary and capricious. *Id.* In the instant case, the trial court should have examined the reasons for the disciplinary action, which must bear a reasonable relation to a policeman's

fitness or capacity to hold his position. *See Id.* If there was no reasonable relationship, then the order of the merit board was arbitrary and capricious as a matter of law and should have been vacated. *Id; City of Fort Wayne v. Bishop* (1950), 228 Ind. 304, 92 N.E.2d 544; *see also Indiana ex rel. Felthoff v. Richards* (1932), 203 Ind. 637, 180 N.E. 596. Trial court review is limited to determining whether or not the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate constitutional and statutory provisions. *City of Marion v. Alvarez* (1972), 151 Ind.App. 133, 277 N.E.2d 916. Upon review, the trial court does not weigh the evidence. *Lloyd v. City of Gary* (1938), 214 Ind. 700, 17 N.E.2d 836.

■ An arbitrary and capricious decision is one that is willful and unreasonable, without any consideration of the facts and in total disregard of the circumstances. *Metropolitan School District of Martinsville v. Mason* (1983), Ind.App., 451 N.E.2d 349, *trans. denied.* It is an act without some basis which would lead a reasonable and honest person to the same action. *Mason, supra.* The reviewing court must give deference to the expertise of the administrative body. *Mason, supra.* Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *L.S. Ayres & Co. v. Indianapolis Power & Light Co.* (1976), 169 Ind.App. 652, 351 N.E.2d 814, *trans. denied.* The burden of proving that the administrative action is arbitrary and capricious is upon the challenging party. *Mason, supra.*

Police department disciplinary actions have been upheld in instances involving the following indiscretions: drinking on duty and refusing to obey an order of a superior, *Pope, supra;* using poor judgment in shooting a man, *Lloyd, supra;* sleeping while guarding a prisoner, *Alvarez, supra;* and lingering in a tavern after being directed to the scene of a burglary. *Cross v. State ex rel. Linton* (1981), Ind.App., 419

N.E.2d 991, *trans. denied.* As was said in *Pope:*

"From the very nature of a policeman's duty his conduct in the community on and off duty must be above reproach."

■ The issue in the instant case is whether substantial evidence exists which reasonable minds might accept to support the conclusion that Dowler had become emotionally unstable to the point that she was unable to properly function as a police officer. We are of the opinion that there was such evidence, and that the trial court, in reversing the decision of the Commission, reweighed the evidence and substituted its judgment for that of the Commission.

Prominent and foremost in the evidence is the admitted attempted suicide. Such an act is strong evidence of emotional instability. As knowledgeable and experienced persons know, and as stated by Chief Henderson, the fundamental qualification of a policeman is emotional stability. A policeman frequently works alone, wields great authority, carries lethal weapons which he is empowered to use in proper circumstances, and exercises wide discretion continuously while on and off duty. He must, at a moment's notice be prepared to pursue dangerous criminals and shoot them if necessary, or be shot. He may expect high-speed chases. He is confronted with extricating hurt, dead, and dying people from vehicular accidents. In short, it is not an occupation for the fainthearted, a person with weak nerves, or a person with questionable emotional stability. Such unfortunate afflictions go to the very heart of the qualifications of a police officer. Lack of control and bad judgment can result in grave consequences.

In addition to the evidence of suicide to demonstrate emotional instability, there is the evidence of Dowler's heavy drinking and the fact that Dr. Strain diagnosed her as a "depressive psychoneurotic"; the depression being estimated as moderate in strength and somewhat chronic. Drs. Roach and Strain recommended therapy and Karen Ladd, then a Ph.D. candidate, noted Dowler's lack of coping skills.

We also note the testimony of Chief Henderson. Non-expert testimony is allowable on the issue of mental competence and the opinion of medical experts does not preclude the trier of fact from considering and weighing such evidence, and reaching a conclusion opposite to the conclusion of the expert. *In re Guardianship of Carrico v. Bennett* (1974), 162 Ind.App. 330, 319 N.E.2d 625. From all the evidence, reasonable people may conclude (though reasonable people could disagree) that Dowler had become sufficiently emotionally unstable as to be unreliable as a policeman in stress situations.

For the above reasons, this cause is reversed and the trial court is ordered to deny Dowler's petition for judicial review.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.