Bruce DAVIDSON, Appellant–Petitioner,

v.

CITY OF ELKHART, Indiana,
Appellee–Respondent.

No. 20A05–9705–CV–200.

Court of Appeals of Indiana.

May 21, 1998.

John C. Ruckelshaus, M. Elizabeth Bemis, Ruckelshaus, Roland, Hasbrook & O'Connor, Indianapolis, for Appellant–Petitioner.

Paul D. Eash, Elkhart, for Appellee–Respondent.

## OPINION

ROBERTSON, Senior Judge.

Bruce Davidson appeals from the trial court's decision affirming the action of the

Elkhart Board of Public Works (the "Board") on two of three counts of misconduct resulting in his discharge from the Elkhart Police Department. Davidson raises the following issues for our review:

1. Whether the trial court erred when it ruled that the Board's decision that Davidson violated rules regarding unauthorized statements to the press was not arbitrary or capricious and was supported by substantial evidence?; and

2. Whether Davidson's statements to the press constituted protected speech for which he could not be subjected to disciplinary action by the Police Department?

In addition, the Board cross-appeals the trial court's decision reversing its determination that the third allegation of misconduct also warranted Davidson's discharge, raising two issues. However, as our resolution of Davidson's issues is dispositive of this case, we need not address the Board's allegations of error.

### FACTS

Davidson was a patrolman with the Elkhart Police Department and was president of the local Fraternal Order of Police. On July 6, 1995, Davidson received a letter from the Board president detailing certain charges which had been made against him by the Chief of Police. The letter stated in pertinent part as follows:

2. On or about May 18, 1995, you made an unauthorized news release regarding the death investigation of Derrick Conner. The release contained information or misinformation concerning an ongoing criminal and internal investigation. It was presented at such a time and in such a manner as to be antagonistic and detrimental to public peace or welfare.

. . .

3. On or about June 15, 1995, you issued a press release containing misinformation concerning the criminal and internal investigation into the shooting death of Derrick Conner. This release of information caused unnecessary risk to fellow officers, disruption in the work place, interference or delays in the investigation, and was detrimental to public peace or welfare. R. 53–55.

On May 17, 1995, Derrick Conner was shot and killed by an Elkhart police officer pursuant to an arrest. The Police Department began an internal investigation into the shooting, and the Elkhart Prosecutor's Office also began an investigation, ultimately presenting the case to a grand jury. Because Conner was black, and the officer who shot him was white, a great deal of racial tension surrounded the investigations and the grand jury inquiry. Davidson was not involved in the investigation in any way, and was not authorized by the Police Department to make any statements regarding the status of the investigation. However, the day after the shooting, Davidson, identified as the president of the Fraternal Order of Police, issued the following statement on a television news report:

From the information we've been given, and for good reasons it's been limited, from the information we've received, I could not imagine the detective that was involved will not be exonerated by a grand jury.

R. 544. Approximately one month later, before the grand jury had convened, Davidson signed a Press Release issued by the Fraternal Order of Police, in which he said that the completed in-house investigation reinforced "what the other members of the department have believed all along and that is that the officers did what was necessary for them to survive that evening." R. 186–87.

Following a hearing before the Board on these charges, the Board issued its decision terminating Davidson from the Police Department. R. 354–65. The Board specifically found that Davidson's conduct in releasing information and making statements regarding a pending investigation without authorization violated several department and local rules. The Board further found that Davidson's statements were damaging to the Police Department and to the public and that termination was warranted and in compliance with the First Amendment.

Davidson filed a Petition for Judicial Review. The trial court found that the Board's

decision with regard to Davidson's unauthorized statements to the press was not arbitrary and capricious nor an abuse of discretion and was in accordance with the law, and therefore, Davidson's motion to reverse the Board's decision terminating him from employment with the Police Department was denied. Davidson appeals this determination.

### STANDARD OF REVIEW

▮ Our review of administrative actions is very limited. *City of Greenwood v. Dowler*, 492 N.E.2d 1081, 1084 (Ind.Ct.App. 1986). We must give deference to the expertise of the administrative body, and we will not reverse the discretionary decisions of administrative bodies without a showing that the decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *Id.* Our review is limited to determining whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate constitutional and statutory provisions. *Id.* at 1085. We may not substitute our judgment for that of the administrative body, or modify a penalty imposed by that body in a disciplinary action, absent a showing that such action was arbitrary and capricious. *Id.* at 1084.

▮ An arbitrary and capricious decision, which the challenging party bears the burden of proving, is a decision which is willful and unreasonable, made without any consideration of the facts and in total disregard of the circumstances, and lacks any basis which might lead a reasonable and honest person to the same decision. *Id.* at 1085. "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* On review, we do not reweigh the evidence. *Id.*

### DISCUSSION AND DECISION

#### I.

▮ Davidson argues that the Board's decision with regard to his unauthorized statements to the press was arbitrary and capricious and unsupported by substantial evidence. Davidson essentially asks us to reweigh the evidence presented to the Board and substitute our judgment for that of the Board. However, we cannot say on our review of the record that the Board's decision was "willful and unreasonable, made without any consideration of the facts and in total disregard of the circumstances, and lacking any basis which might lead a reasonable and honest person to the same decision." *See City of Greenwood*, 492 N.E.2d at 1085.

▮ Davidson also argues that his statements were constitutionally protected speech for which he, as a public employee, could not be subjected to termination by the City. He contends that the trial court erred in failing to consider whether the Board's decision was constitutional. The United States Supreme Court has determined that in certain circumstances, a public employee may not be terminated for speech. *See Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Constitutional review of government employment decisions rests on different principles than review of speech restraints which the government imposes as sovereign. *Waters v. Churchill*, 511 U.S. 661, 674, 114 S.Ct. 1878, 1887, 128 L.Ed.2d 686 (1994). The government's role as an employer gives it a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large. *Id.* at 671, 114 S.Ct. at 1885–86. The Court has developed a test for determining whether a public employee's speech is protected, and thus, whether he has been wrongfully discharged for that speech, which test has been adopted by courts of this state. *Indiana Dept. of Highways v. Dixon*, 541 N.E.2d 877, 881 (Ind.1989); *Bird v. County of Allen*, 639 N.E.2d 320, 328 (Ind.Ct.App.1994). "To be protected, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Waters*, 511 U.S. at 668, 114 S.Ct. at 1884 (quoting *Connick*, 461 U.S. at 142,

103 S.Ct. at 1687). When the government acts as employer, its interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest to a significant one. *Id.* at 675, 114 S.Ct. at 1887–88. An inquiry into the protected status of speech is one of law, not fact, and it is thus for the court to apply the above test to the facts of the case before it. *Connick,* 461 U.S. at 148 n. 7, 103 S.Ct. at 1690 n. 7.

Following an extensive fact-finding process, the Board found that Davidson's statements to the press "interfered with the efficient operation of the Police Department, undermined the authority of the Department Administration, [were] antagonistic and detrimental to public peace or welfare, conduct unbecoming an officer, and [were] an unauthorized release of confidential information." R. 22. The Board also found that Davidson's statements "caused unnecessary risk to fellow officers, disruption in the work place, [and] interference or delays in the investigation . . . ." R. 22. In deciding that Davidson's speech warranted discharge, the Board considered the *Connick* test, and concluded that discharge was in compliance with the First Amendment.

■ It is true, as Davidson contends, that the trial court did not undertake an independent analysis of the protected nature of his speech pursuant to the *Connick* test in upholding the decision of the Board with respect to these charges. Due to the volatile nature of the situation, there can be little doubt that the subject matter of Davidson's statements was of public concern. The city was apparently polarized by the shooting, and there were strong factions supporting both the victim and the officer. The outcome of the investigation was therefore of concern to everyone in the city. However, we determine, as a matter of law, that the disruptiveness of Davidson's conduct, as found by the Board, was sufficient to outweigh whatever First Amendment value his speech might have had. Davidson interfered with an ongoing investigation by making premature conclusions about the outcome, which interference threatened to undermine the authority and credibility of both the Elkhart Police Department and the County Prosecutor's office. Davidson's comments made it seem as though the outcome of the investigation was pre-determined, and that the grand jury was a mere formality to sanction the result. In addition, Davidson's speech made the Police Department doubt his future effectiveness and credibility as an officer. Under the *Connick* test, Davidson's conduct was unprotected and thus he was not immune from discipline.

## II.

The Board cross-appeals the trial court's decision that its determination that the third allegation against Davidson also warranted termination was arbitrary and capricious and not in accordance with the law. Even were we to conclude that the trial court erred in overturning the Board's decision with respect to the third allegation, the result would be the same because, as discussed previously, the trial court properly upheld the Board's decision that termination was warranted for Davidson's unauthorized statements to the press. Thus, the trial court's judgment that Davidson's motion to reverse the Board's decision terminating his employment is affirmed.

SHARPNACK, C.J., and RUCKER, J., concur.