**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DOUGLAS K. BRIODY**
Law Office of Doug Briody
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| L.M. ZELLER, individually, and d/b/a ZELLER ELEVATOR COMPANY, | ) | |
| | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1303-PL-115 |
| | ) | |
| INDIANA FIRE PREVENTION AND BUILDING SAFETY COMMISSION, | ) | |
| | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Carl A. Heldt, Judge
Cause No. 82C01-1110-PL-524

**December 11, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

L.M. Zeller, individually, and d/b/a Zeller Elevator Company ("Zeller") appeal from the trial court's order affirming the decision of the Indiana Fire Prevention and Building Safety Commission (the "Commission"). Zeller raises two issues which we revise and restate as whether Zeller was denied a fair hearing before the Commission and whether the decision of the trial court must be reversed. We affirm.

FACTS AND PROCEDURAL HISTORY

The Commission has promulgated rules regarding the safety of elevators in Indiana. See 675 IAC 21 (Safety Codes for Elevators, Escalators, Manlifts and Hoists). The Department of Homeland Security, Division of Fire & Building Safety, Division of Elevators (the "Division"), performs inspections of elevators throughout Indiana. In March and April of 2011, Raymond Haase, an inspector for the Division, prepared reports of inspection with respect to certain elevators serviced by Zeller which included two reports of inspection relevant to this appeal. According to the reports, on April 5, 2011, Haase inspected elevators identified as numbers 34371 and 34372 at the American General Finance Building in Evansville, Indiana. Each report identified a number of violations of the Safety Code (subsequently defined) which required corrective action. With respect to the violations relevant to this appeal, the reports for both elevators 34371 and 34372 determined: "No means has been provided for either on or in the buried portion of the cylinder, to check for ongoing compliance with Section 3.18.3.8.1 [of the Safety Code], specifically checking for stray currents that can cause corrosion due to galvanic or electrolytic action." Exhibits at 113, 126. The reports also determined that "L.M. (Mike) Zeller acted as an elevator mechanic" by working on elevators 34371 and

2

34372 without a valid elevator mechanic license and that his license was expired. Id. Zeller appealed the determinations.

On June 23, 2011, a hearing with the Commission was held before an Administrative Law Judge (the "ALJ") at which Mike Zeller testified for Zeller and Haase testified on behalf of the Division. The reports of inspection for elevators 34371 and 34372 were admitted as Exhibits B and C, respectively. Zeller testified regarding the Division's determinations that elevators 34371 and 34372 were in violation of Section 3.18.3.8 of the Safety Code related to cylinders buried in the ground. When asked whether there is "a means of checking whether or not this cylinder is corroding or not," Zeller responded "[w]e've eliminated that possibility." June 23, 2011 Hearing Transcript at 12. When asked if there is "a means of checking that," Zeller stated "Yes, a visual. You'll just look at it . . . ." Id. Zeller testified: "We seal the cylinder completely. We hermetically seal it in a PVC casing that prevents any opportunity for any contact of galvanic action . . . that you're trying to monitor . . . ." Id. at 13. Zeller testified that the method used "exceeds all the other methods mentioned in this code." Id. Zeller asked to introduce a letter from an engineer prepared in 2007 regarding a different elevator.[1] Zeller testified that, although the letter concerned a different elevator, "they're all done the same just like all the other companies are doing their stuff the same." Id. at 15. The Division objected to the admission of the letter. Zeller stated: "Our technique has been evaluated, and it is our standard installation. We do them all like this. We've done them

---

[1] In the letter, the engineer stated that he reviewed the Safety Code and "the drawing of Zeller Elevator Company showing a Standard Hydraulic Jack installation" and that the installation, which included concrete between the outer wall of the cylinder and PVC and the application of coal tar coating on the steel cylinder, exceeded the requirements of the Safety Code and should only require a visual inspection of the exposed portion of the jack cylinder.

3

all like this since the early '70s." Id. at 16. The ALJ noted that the hearing pertained to specific elevators, and Zeller stated "[w]e'd be back here on the next one we do" and that "[w]e need to put it to bed." Id. at 17-18. The ALJ stated "I suppose you would probably move forward to getting the code changed so that it includes your technique," and Zeller stated "No, I have not gone to the code committee. I'm not on it. But, actually, it's been said we're the only company that does that." Id.

Zeller further testified that there is "no part of the code that tells you how you are to do that test," and counsel for the Division stated "[t]he code is very clear about how you provide what's necessary" and "[i]t says you can use a variety of methods, and if Mr. Zeller says this is how it's done on this particular piece of equipment, this is the design I used, this is how someone can inspect what's buried, and this is the engineer's report on this piece of equipment, that answers the question." Id. at 32-33. Zeller then testified "[t]here's no way that anybody else can test what's buried. Nobody can." Id. at 33. Counsel for the Division stated "[t]hat's the issue." Id. Zeller testified: "Unless you pull it out, you can't test it. In fact, we've got cylinders out here right now that we've taken and opened up – we've taken a string and dropped down in there with a nut tied on it, high-tech, and pulled it back out. And if it's wet, there's water down there, and that's the only way you can find that out. But there's no way that the inspector would walk up and be able to inspect that, and they're going to come back and haunt you folks. You got a surprise coming. It's going to bite you." Id. Zeller later testified that "if you hook a meter to it, you can check the ground and see if you have any current path so that you can do that." Id. at 40. On cross-examination, when asked how a buried cylinder could be

monitored, Zeller testified "[y]ou can monitor it with an ohmmeter and check it for continuity to ground to see if there's any leakage in this casing to the outside source. It's a completed path. You've got to have a way there and a way back." Id. at 42.

Haase testified that he was assigned as the inspector for the alteration inspections for elevators 34371 and 34372, that the alteration was to correct a single-bottom jack issue, and that, due to the method of installation, there was no means to check for stray currents or galvanic action at the bottom of the cylinder. Haase testified that Zeller "had pulled the existing jack," performed some work on it, and ultimately "reinstalled [it] in a PVC casing that was in the ground." Id. at 53. Haase stated that "between the gap between the cylinder itself and this PVC casing that was in the ground, [Zeller] put a slurry of portland cement and that had sealed over." Id. at 53-54. As a result, Haase could only see "the top part of the jack" and could not see "anything other than that there is PVC at the top, there is cement at the top, and the jack is at the top," and that "you can't visually determine that at the bottom of the cylinder or throughout the cylinder that there's not a problem with the PVC integrity or anything of that nature." Id. at 54. Haase further testified that there is "no way to test it with an ohmmeter as [Zeller] had testified [because] the cylinder is attached to ground . . . with the pit channels," that "[t]he pit channels are at ground potential," that "[t]he cylinder is also attached to ground through the piping that comes from the pumping unit," that "[t]he pumping unit is grounded," and thus that "going from ground to the cylinder doesn't show you anything" and that "[t]he fact that there's no continuity there doesn't tell you the status of the integrity of the PVC below ground other than what you can see." Id. at 54-55. Haase said that "when

5

electrolysis attacks the jack it eats away the metals" and creates a potential for a failure in the jack which in turn, depending on the size of the failure, could result in an elevator descending at an accelerated rate of speed. Id. at 55. Haase also testified that "the cylinder . . . that was installed was the same cylinder that was installed over 45 years ago, and there was no way for me to tell whether that cylinder met the current standard" and that the code in effect when the cylinder was initially installed differed from the current standard. Id. at 56.

In addition to the 2007 letter prepared by an engineer, Zeller requested the ALJ to admit into evidence two documents, the first being an excerpt from the American Civil Engineer's Pocket Book initially published in 1911[2] addressing the protection of steel from corrosion and the second being an excerpt from a report from the American Concrete Institute (the "ACI") addressing corrosion of metals in concrete.[3] Counsel for the Division objected "to [the documents'] relevance and the fact that I don't know where

_____

[2] Zeller testified as to the name of the book and that it was "a brand new book, new edition. It's 100 years old. It's new news." June 23, 2011 Hearing Transcript at 91. Zeller's brief indicates the full citation of the book and that it was published in 1911. The excerpt of the book included in the appellant's appendix states in part that "[a] continuous coating of portland cement has been found by experience to be a practically perfect protection of steel against corrosion." Appellant's Appendix at 44. The excerpt includes comments regarding the success of the method under certain conditions (the relative depth the steel was embedded in concrete) over certain periods of time (such as twenty or more years) and noted that concrete is not an adequate protection of steel from electrolysis of steel reinforcement. The excerpt does not address the protection of elevator jack cylinders in particular and the recommendations relate to steel in girders, columns, beams, and floor slabs.

[3] Zeller's brief indicates the full citation of the report and that it was published in 1990. The excerpt of the report included in the appellant's appendix, which indicates a copyright date of 1985, states in part that "[c]oncrete normally provides reinforcing steel with excellent corrosion protection" and that "corrosion of steel does not occur in the majority of concrete elements or structures." Appellant's Appendix at 45. The report further states "[c]orrosion of steel, however, can occur if the concrete is not of adequate quality [or] the structure was not properly designed for the service environment . . . ." Id. The excerpt of the report does not specifically address the use of concrete to prevent corrosion of elevator jack cylinders.

it came from." Id. at 92. Zeller responded that "the relevance is whether or not it's an acceptable method." Id. The ALJ stated that "we need a witness to say here is the . . . current standard" and that "[y]ou'd need an expert witness to say that this book that you're holding in your hand this is the real deal." Id. Zeller stated "I've been in the elevator trade for 48 years" and "[i]f I haven't learned something in 48 years, I am the expert." Id. The ALJ commented that Zeller was an interested party and that he did not have an independent expert.[4] The ALJ did not admit the documents.

On July 21, 2011, the ALJ issued an order affirming the Division's determination of violations with respect to elevators 34371 and 34372. In its findings of fact, the ALJ found that elevators 34371 and 34372 were both initially installed in 1964, that "[t]he hydraulic cylinders were extracted and some work performed on them with the intent that the work would bring them up to current code standards," and "[t]here was no acceptable means provided on either elevator 34371 or 34372 to check for stray currents that can cause corrosion to the hydraulic cylinders as a result of galvanic or electrolytic action." Exhibits at 210. In its conclusions of law, after setting forth the relevant sections of 675 IAC 21-3 and Section 3.18.3.8.2 of the Safety Code, the ALJ concluded that "[e]levators 34371 and 34372 were not provided with an acceptable means to check ongoing compliance with 3.18.2.8.1 on April 5, 2011 and were, therefore in violation." Id. at 213. The ALJ further found that the Safety Code "contains several design and engineering standards for the design of hydraulic cylinders used with hydraulically actuated

---

[4] Later, the ALJ asked "[h]ow do you know I didn't write that," Zeller replied "[i]f you did, you're one smart s.o.b.," the ALJ stated "I know. Do you understand what I'm getting at?" and Zeller responded "[y]ou are the smartest guy" and "[i]f you only knew 1 percent of it . . . you'd be great . . . I would worship you." June 23, 2011 Hearing Transcript at 93-94. The ALJ said "[y]ou want to act stupid, don't you," and Zeller stated "No. I would worship you if you knew 1 percent." Id. at 94.

elevators" and that "[b]y not having documentation available subsequent to burying the cylinders for elevators 34371 and 34372 or not allowing inspection prior to burying the said cylinders it is impossible to confirm that those elevators are in compliance with those standards." Id. at 212-213. On September 7, 2011, the Commission affirmed the decision of the ALJ.

On October 7, 2011, Zeller filed a verified petition for judicial review pursuant to the Indiana Administrative Orders and Procedures Act ("AOPA") in the Vanderburgh Circuit Court. On October 8, 2012, the trial court held a hearing at which the parties presented arguments. On November 27, 2012, the trial court entered findings of fact and conclusions of law affirming the order of the ALJ and Commission. The court found, with respect to elevators 34371 and 34372, that the inspector was unable to visually determine the integrity of the PVC or the cylinder due to the cement being slathered on the top of the cylinder, that the inspector had no alternative method to check for corrosion within the mechanical device, and that, while an ohmmeter can determine continuity, continuity does not demonstrate the integrity of the PVC below ground which is what the inspector needs to determine. The court found that Inspector Haase was unable to determine if the jacks on these elevators, originally installed over forty-five years earlier, had been altered to comply with the current standards. The court further found that "[t]he main issue . . . is that the Inspector was unable to visually inspect these lifting devices for the purposes of determining corrosion or compliance" and that "[t]herefore, the exclusion of certain evidence by the ALJ was properly excluded as immaterial or irrelevant." Appellant's Appendix at 17. The court also found that the letter Zeller sought to

8

introduce concerned a different elevator than the ones being considered in this matter and was properly excluded, that the American Civil Engineer's Pocket Book which was one hundred years old was properly excluded, and that the article from the American Concrete Institute published in 1990 was properly excluded. The court found that the citations issued for elevators 34371 and 34372 are supported by substantial evidence in the record and that the final agency order was not arbitrary or capricious. Zeller filed a motion to correct error, which was deemed denied. Zeller now appeals the trial court's order.

ISSUE AND STANDARD OF REVIEW

The issue is whether the decision of the Commission must be reversed. The AOPA limits judicial review of agency action. Huffman v. Office of Envtl. Adjudication, 811 N.E.2d 806, 809 (Ind. 2004). Agency action subject to AOPA will be reversed only if the court "determines that a person seeking judicial relief has been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Id.; see Ind. Code § 4-21.5-5-14(d).

A trial court and an appellate court both review the decision of an administrative agency with the same standard of review. See St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cnty., 873 N.E.2d 598, 600 (Ind. 2007). In reviewing the decision of an administrative agency, we defer to the agency's expertise

9

and will not reverse simply because we may have reached a different result. Filter Specialists, Inc. v. Brooks, 906 N.E.2d 835, 844 (Ind. 2009). "The burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity." Ind. Code § 4-21.5-5-14(a). "Review of an agency's decision is largely confined to the agency record, and the court may not substitute its judgment for that of the agency." Bd. of Comm'rs of LaPorte Cnty. v. Great Lakes Transfer, LLC, 888 N.E.2d 784, 788-789 (Ind. Ct. App. 2008) (internal quotations omitted). We give deference to an administrative agency's findings of fact, if supported by substantial evidence, but review questions of law *de novo*. Id. (citing Huffman, 811 N.E.2d at 809). On review, we do not reweigh the evidence. Davidson v. City of Elkhart, 696 N.E.2d 58, 61 (Ind. Ct. App. 1998), trans. denied.

On judicial review, the reviewing court is bound by an agency's findings of fact if those findings are supported by substantial evidence. Ind. Civil Rights Comm'n v. S. Ind. Gas & Elec. Co., 648 N.E.2d 674, 679 (Ind. Ct. App. 1995), trans. denied. Indiana courts have defined substantial evidence as something "more than a scintilla, but something less than a preponderance of the evidence." State v. Carmel Healthcare Mgmt. Inc., 660 N.E.2d 1379, 1384 (Ind. Ct. App. 1996), trans. denied; see also Ind. Family and Soc. Servs. Admin. v. Pickett, 903 N.E.2d 171, 177 (Ind. Ct. App. 2009) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted), aff'd and clarified on reh'g. Only if the agency action is unsupported by substantial evidence or is contrary to law may it be reversed. Lutheran Hosp. of Ind., Inc. v. Ind. Dep't of Pub. Welfare, 597 N.E.2d 1301,

10

1304 (Ind. Ct. App. 1992), trans. denied.  Also, an administrative decision is arbitrary and capricious only when it is willful and unreasonable, without consideration or in disregard of the facts and circumstances of the case, or without some basis which could lead a reasonable person to the same conclusion.  Indianapolis Downs, LLC v. Ind. Horse Racing Comm'n, 827 N.E.2d 162, 170 (Ind. Ct. App. 2005).

DISCUSSION

The Indiana Administrative Code contains safety regulations related to the installation and alteration of elevators.  See 675 IAC 21-1-10; 675 IAC 21-3.  At the time of the inspections, section 675 IAC 21-3-1 provided:

> That certain document, being titled as ANSI/ASME A17.1, 2004, Safety Code for Elevators and Escalators, published by the American Society of Mechanical Engineers, Three Park Avenue, New York, New York 10016 [(the "Safety Code")] is hereby adopted by reference and made a part of this rule as if fully set out herein, save and except those additions, deletions, and amendments as are made in section 2 of this rule.

Section 3.18.3.8 of the Safety Code relates to cylinders buried in the ground.  Exhibits at 115.  Section 3.18.3.8.1 provides: "Cylinders buried in the ground shall be protected from corrosion due to galvanic or electrolytic action, salt water, or other underground conditions."  Id.  Section 3.18.3.8.2 of the Safety Code provides that "[t]he methods specified in 3.18.2.8.3 shall be considered as acceptable, provided that they . . . provide means for checking ongoing compliance with 3.18.3.8.1."  Id.  Section 3.18.3.8.3 of the Safety Code provides:

> The following are the specified methods:
>
> (a)    the cylinder shall be constructed of a material that is immune to the stated conditions; or

11

(b)     the cylinder shall be completely covered or encased in a material that completely surrounds the exterior surface and is immune to the stated conditions. If the space between the protective casing and the cylinder is empty, the casing must be designed to withstand a static head of water from ground level to the bottom of the cylinder, based on the manufacturer's rating of the material used; or

(c)     the cylinder shall be protected by a monitored cathodic protection system; or

(d)     the cylinder shall be protected by a means that will provide an immunity level not less than that provided by the above methods for the stated conditions.

Zeller contends that the ALJ erred in refusing to consider his testimony as an expert and the documentary evidence he proffered. Zeller argues that this case turns entirely upon the evidence he offered but refused by the ALJ and in turn the Commission. Zeller posits that the ALJ should have accepted Zeller's word alone as to the protective properties of concrete given Zeller's forty-eight years of experience, that the book excerpt, report, and letter were each relevant to the determination of the main question at issue, and that their exclusion on relevance grounds was plain error. Zeller also argues that there is no prohibition against hearsay evidence in an administrative review proceeding and that the book excerpt falls within an exception to the hearsay rule for statements in ancient documents. His position is that, although the engineer's letter was written with reference to a different elevator installation, Zeller testified more than once that he uses the very same protective methods on all of his elevators. Zeller states he is not asking the court to reweigh the evidence but for the agency to provide him with

12

procedural fundamental fairness, and requests that we overturn the trial court's order and remand the cause to the agency for further proceedings.

The Commission maintains that Zeller is not entitled to a new administrative hearing and that the relevant evidence concerned whether it was possible to inspect the elevator cylinders for corrosion, that Zeller's evidence concerned whether the materials he used to protect the cylinders were generally sufficient to protect cylinders from corrosion, and that this evidence was not relevant to the question whether his methods permitted the inspection for compliance with the standards. The Commission argues that Zeller does not want this court to reverse the agency action on the merits but to provide him another hearing. The Commission maintains that the documents regarded the efficacy of concrete to protect steel from corrosion, and that the Safety Code specifically provides that the methods used to protect cylinders from corrosion must provide means for checking ongoing compliance with the protection requirements. The Commission argues: "Accordingly, Zeller had to show more than the fact that his use of concrete and PVC pipes was generally accepted for protecting elevator cylinders from corrosion. He had to show that he had provided a means for checking that the cylinders . . . were actually [] protected . . . as required by . . . the Safety Code." Appellee's Brief at 8. The Commission also argues that Zeller testified at length and that he has not shown any prejudice due to the fact that he was not permitted to testify as an expert witness.

In its reply brief, Zeller argues that the documents he wished to admit were "offered to show that Zeller's standard cylinder protection method effectively rendered the two cylinders *immune* to the harmful conditions needed to endanger the cylinders,

13

wholly in accordance with Section 3.18.3.8.3(b) of the Code." Appellant's Reply Brief at 2. Zeller notes that "Section 3.18.3.8.3(b), in fact, contemplates that the space between the protective casing and the cylinder will be filled with some substance, requiring certain further precautions to be taken in the event that space is left empty." Id. at 4 n.6. Zeller also argues that, although the agency has speculated that "the PVC or the concrete might not go 'all the way down' the length of the cylinder," the evidence was "that is precisely the way Zeller's cylinders have always been constructed." Id. at 5. Zeller states that the fact of compliance "is easily determined by simply looking to see that the PVC and concrete are yet in place," and that "'[o]ngoing compliance' is thus assured." Id. (citing Section 3.18.3.8.2 of the Safety Code).

With respect to the documentary evidence Zeller wished to be admitted into evidence, we note that Ind. Code § 4-21.5-3-26 provides in part:

> Upon proper objection, the administrative law judge shall exclude evidence that is irrelevant, immaterial, unduly repetitious, or excludable on constitutional or statutory grounds or on the basis of evidentiary privilege recognized in the courts. In the absence of proper objection, the administrative law judge may exclude objectionable evidence. The administrative law judge may admit hearsay evidence. If not objected to, the hearsay evidence may form the basis for an order. However, if the evidence is properly objected to and does not fall within a recognized exception to the hearsay rule, the resulting order may not be based solely upon the hearsay evidence.

The documentary evidence Zeller wished to be admitted into evidence consists of the letter prepared by an engineer in 2007 regarding a different elevator, an excerpt from the 1911 American Civil Engineer's Pocket Book, and an excerpt from a report from the ACI. The excerpt of the 1911 book included in the appellant's appendix stated that a continuous coating of cement has been found by experience to be a practically perfect

14

protection of steel against corrosion, noted the success of the method where steel was embedded in concrete to a depth of three inches and exposed to sea water and air for nine months, and stated that there is good evidence that concrete is not an adequate protection of steel from electrolysis and that where work is well executed and the steel well covered by cement the electrolytic action is greatly retarded but not entirely prevented. The excerpt of the ACI report states in part that "[c]oncrete normally provides reinforcing steel with excellent corrosion protection" and that "corrosion of steel does not occur in the majority of concrete elements or structures." Appellant's Appendix at 45. The report further states "[c]orrosion of steel, however, can occur if the concrete is not of adequate quality [or] the structure was not properly designed for the service environment . . . ." Id.

While the installation described in the 2007 letter may be generally similar to the work performed by Zeller on elevators 34371 and 34372 as described by the testimony, the engineer's assessment related to a different elevator and there may be other factors which distinguish the installation in that elevator from the work performed on the cylinders in elevators 34371 and 34372. The engineer's letter and the documentary excerpts suggest that those factors may include the condition of the cylinders at the time of the installations or alterations,[5] the application of coal tar or other coating on the steel cylinder, the adequacy of the quality of the concrete used, the thickness or application of the cement or concrete on the cylinders, and the service environment. See id. at 44-46. Moreover, neither the excerpt from the 1911 book or from the ACI report address the protection of elevator cylinders in particular or, notably, whether and when such

_____

[5] Elevators 34371 and 34372 were initially installed in 1964.

15

cylinders coated with cement or concrete should be inspected and, if so, under what circumstances or conditions or the timeframe in which such inspections should occur. The documents relate to the extent concrete provides steel with corrosion protection and not to the need for or the ability to accommodate subsequent inspections. As previously noted, Section 3.18.3.8.2 of the Safety Code provides that "[t]he methods specified in 3.18.2.8.3 shall be considered as acceptable, provided that they . . . provide *means for checking ongoing compliance* with 3.18.3.8.1." Exhibits at 115 (emphasis added).

Based upon the reports of inspection and the record, we cannot say that the evidence Zeller wished to have admitted was relevant and material or that the ALJ improperly excluded the evidence.[6] See Ind. Code § 4-21.5-3-26. In addition, although the ALJ did not admit Mike Zeller's testimony as that of an expert, he testified at length about the various violations found by the Division, cross-examined Haase regarding the violations, and presented argument regarding the application of the Safety Code to the alterations. Based on our review of the transcript, we cannot say that Zeller received an unfair hearing and accordingly is not entitled to a new administrative hearing.

With respect to the determination of the ALJ and Commission that as of April 5, 2011, elevators 34371 and 34372 were not provided with an acceptable means to check ongoing compliance with 3.18.3.8.1 of the Safety Code, Haase testified that, as a result of the alteration work performed by Zeller, he could not determine the integrity of the PVC and cylinder below ground. Haase also testified that it was not possible to inspect the

---

[6] Because we find that the ALJ did not improperly exclude the evidence on the basis that it was not relevant and material, we do not address whether the evidence was or could have been properly excluded on hearsay grounds or, if it did constitute hearsay, whether it could have formed the basis for an order.

16

cylinder as necessary using an ohmmeter, that "the cylinder . . . that was installed was the same cylinder that was installed over 45 years ago, and there was no way for me to tell whether that cylinder met the current standard," and that the code in effect when the cylinder was initially installed differed from the current standard. June 23, 2011 Hearing Transcript at 56. Based upon the record, we find that substantial evidence presented at the administrative hearing supports the findings and conclusions of the ALJ and the Commission and that the final agency order was not arbitrary or capricious. Zeller has not met its burden of demonstrating the invalidity of the agency action.

## CONCLUSION

We conclude that Zeller was not denied a fair hearing, that substantial evidence was presented which supports the ALJ's findings and conclusions, and that the trial court did not err in affirming the Commission.

For the foregoing reasons, we affirm the order of the trial court.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.