# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**JOHN F. KAUTZMAN**
**EDWARD J. MERCHANT**
Ruckelshaus Kautzman Blackwell
  Bemis & Hasbrook
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**DAVID L. STEINER**
Deputy Attorney General
Indianapolis, Indiana

FILED

Feb 04 2014, 9:40 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JASON A. FISHBURN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1305-MI-391 |
| | ) | |
| INDIANA PUBLIC RETIREMENT | ) | |
| SYSTEM, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-1204-MI-16839

**February 4, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Jason A. Fishburn appeals from the trial court's ruling affirming the determination of the Indiana Public Retirement System ("INPRS") of his disability benefit as a member of the 1977 Police Officers' and Firefighters' Pension and Disability Fund (the "1977 Fund").[1]  Fishburn raises two issues which we consolidate and restate as whether the ruling of the trial court is erroneous.  We affirm the ruling of the trial court and the agency determination.

FACTS AND PROCEDURAL HISTORY

Fishburn, who was a police officer with the Indianapolis Metropolitan Police Department ("IMPD"), was shot in the head in the line of duty in July of 2008.  He underwent numerous surgeries and months of therapy and is unable to return to work as a police officer.  On April 7, 2011, he filed an application for disability benefits under the 1977 Fund.[2]  The IMPD Pension Board issued an initial determination that Fishburn's impairment was a Class 1 impairment under Ind. Code § 36-8-8-12.5.  Dr. Omkar Markland, the medical authority for the 1977 Fund, agreed that his impairment was a Class 1 impairment and also determined that the degree of impairment was 42% of the whole person.  On April 26, 2011, INPRS issued an initial determination that Fishburn was eligible for disability benefits, there was no suitable and available work within IMPD, the degree of impairment was 42%, and the class of impairment was Class 1.  The initial determination provided that his monthly disability benefit would be 69.7% of the

_____

[1] Prior to July 1, 2011, the 1977 Fund was administered by the Indiana Public Employees' Retirement Fund ("PERF").  As of July 1, 2011, INPRS consists of a number of retirement funds including the 1977 Fund.  See Ind. Code §§ 5-10.5-2.

[2] In setting forth the facts and procedural background of this case and the 1977 Fund, the parties cite to and do not challenge the facts set forth in the January 24, 2012 decision of the administrative law judge.

monthly salary of a first class patrol officer. Fishburn requested review of the initial determination, and in August 2011 Dr. Markland revised his determination of Fishburn's degree of impairment to 71% of the whole person.

On August 24, 2011, INPRS issued a revised determination (the "Revised Determination") reflecting Dr. Markland's revised impairment finding and stating that Fishburn's monthly disability benefit would be 79.85% of the monthly salary of a first class patrol officer. The total benefit amount was calculated using a formula which added a base monthly benefit determined by class of impairment and an additional monthly benefit determined by degree of impairment. The base monthly benefit for a Class 1 impairment was equal to 45% of the monthly salary of a first class patrol officer.[3]

The additional monthly benefit, which is the amount at issue in this appeal, was determined to be 34.85% of the monthly salary of a first class patrol officer. This determination was made pursuant to a formula established by PERF (now INPRS) in 1989. The formula provided: "Additional benefit percentage = (degree of impairment x .35) plus (10%)." Appellant's Appendix at 49. Specifically, the additional monthly benefit, expressed as a percentage of the monthly salary of a first class patrol officer, was determined by calculating the sum of the following two amounts: (i) the product of Fishburn's degree of impairment of 71% of the whole person and 0.35, which product equaled 24.85%, and (ii) an additional minimum monthly benefit of ten percent. Using this formula, Fishburn's additional monthly benefit was calculated to be 34.85% (24.85% under (i) above plus 10% under (ii)) of the monthly salary of a first class patrol officer,

---

[3] See Ind. Code § 36-8-8-13.5(b) (providing a monthly base benefit of 45 percent of the monthly salary of a first class patrol officer for a member who is determined to have a Class 1 impairment).

and his total monthly disability benefit was calculated to be 79.85% (45% base benefit plus 34.85% additional benefit) of the monthly salary of a first class patrol officer.

Fishburn appealed the Revised Determination. Both parties filed summary judgment motions together with supporting briefs. On January 17, 2012, a hearing was held before an Administrative Law Judge (the "ALJ") at which the parties disputed how the "additional monthly amount" under Ind. Code § 36-8-8-13.5(f) should be calculated.[4] Fishburn argued that the statute should be interpreted to mean that a member's additional benefit (as a percentage of a first class patrol officer's salary) is equal to the member's degree of impairment (as a percentage) and that the formula used by INPRS is erroneous. Specifically, Fishburn argued that a member of the 1977 Fund with a degree of impairment of 45% or higher should receive the maximum 45% of the salary of a first class patrol officer as additional benefit, that a member with a degree of impairment between 10% and 45% should receive that percentage as an additional benefit, and that a member with a degree of impairment less than 10% should receive the minimum 10% as an additional benefit. He contended that, as a result, he was entitled to a base monthly benefit of 45% of the salary of a first class patrol officer and an additional benefit of 45% of the salary of a first class patrol officer, for a total monthly disability benefit of 90% of the monthly salary of a first class patrol officer. INPRS argued that the formula established in 1989 is in accordance with Ind. Code § 36-8-8-13.5(f), that under the formula a member's additional monthly benefit is based on the member's degree of impairment through the application of linear interpolation which scales the member's degree of impairment to the range of minimum and maximum benefits allowable by

---

[4] A transcript of this hearing is not in the record.

4

statute (10% and 45%, respectively), that "[t]he linear interpolation method creates a direct relationship, expressed by a ratio of thirty-five one-hundredths (0.35) to one (1), between a particular degree of impairment (ranging from 0% to 100%) and the additional monthly benefit amount to which the member is entitled (ranging from 10% to 45%)," and that this interpretation has been applied uniformly to the disability benefits of 1977 Fund members including Fishburn. Id. at 31-32.

On January 23, 2012, the ALJ issued its Decision and Recommended Order on Cross-Motions for Summary Judgment which affirmed the Revised Determination. After discussing the facts, the relevant statutory provisions, prior cases involving statutory interpretation, legislative intent, and the doctrine of legislative acquiescence, the ALJ's recommended order states in part:

> These principles compel the conclusion that the interpretation INPRS gave to I.C. § 36-8-8-13.5(f) in 1989, and has consistently applied since, is correct.

> Section 36-8-8-13.5(f) is ambiguous. Every disabled member is entitled to a base benefit of up to 45% of the annual salary of a first class patrol officer based [on] the class of impairment. The medical authority then determines the degree of impairment under I.C. § 36-8-8-13.1(c). Each member is then entitled to an "additional" benefit of between 10% and 45% of salary, to be "determined by the PERF medical authority based on the degree of impairment." I.C. § 36-8-8-13.5(f).

> This last phrase is susceptible to differing interpretations, as demonstrated by the excellent briefs filed by the parties. Petitioner's interpretation is that the additional benefit would be equal to the degree of impairment. This is not unreasonable, but it is not clearly dictated by the words of the statute. If petitioner is correct, one wonders why the medical authority must make any separate determination at all, and why the statute says the benefit is "based on" rather than "equal to" the degree of impairment. Because the degree of impairment has already been determined by the medical authority, the statute need only have stated that the additional benefit would be the same percentage as the medical

5

authority's degree of impairment (with a minimum of 10% and a maximum of 45%).

The INPRS interpretation is that it has the discretion to adopt a formula to convert the degree of impairment to a range of possibilities between 10% and 45%. This interpretation has merit as well, but again is not clearly supported by the statute's language. If application is so formulaic, one wonders what role the medical authority plays in determining the amount. The legislature could have expressed this more clearly, by stating that the benefit would be within a range from 10% to 45%, and proportionately based on the degree of impairment.

Upon concluding that the statute is ambiguous, application of the guidelines of statutory construction supports the INPRS interpretation for several reasons.

First, because INPRS is charged with implementation of the statute, its interpretation [] is given great weight, and if that interpretation is reasonable the judicial construction inquiry ends without even considering the reasonableness of the other party's interpretation. The INPRS interpretation is reasonable because it reflects the most equitable method by which to determine the additional benefit within the range of 10% to 45%, and it is not clearly foreclosed by the statutory language.

Second, as in <u>Mance [v. Bd. of Dirs. of Pub. Emps' Ret. Fund</u>, 652 N.E.2d 532, 534 (Ind. Ct. App. 1995), <u>reh'g</u> <u>denied</u>, <u>trans.</u> <u>denied</u>,] and [<u>Pub. Emps' Ret. Fund v.] Shepherd</u>[, 733 N.E.2d 987, 989 (Ind. Ct. App. 2000), <u>trans.</u> <u>denied</u>], the General Assembly is presumed to have acquiesced in the longstanding and consistent interpretation given the statute by INPRS. PERF adopted its policy for calculation of the additional benefit shortly before the statute took effect at the start of 1990, and it has been unchanged since. Petitioner argues that INPRS is able to cite only one case in which a member disputed the calculation, but the case law does not require a showing of actual legislative awareness. The cases make a presumption of legislative acquiescence without any inquiry into actual awareness, which is really all that can be made where the General Assembly does not record legislative history other than bills introduced and action thereon. It is known that § 36-8-8-13.5 has been amended four times since its enactment in 1989, without any change to subsection (f). There is no evidence of an effort to amend subsection (f) since 1989.

Together, the doctrines of deference to the administrative agency and legislative acquiescence reflect practical realities. PERF officials were not only charged in 1989 with implementation of the new system for

6

calculating disability benefits, they were likely involved in the drafting and consideration of the bill. In the absence of clear evidence of legislative intent such as a committee report, administrative interpretations can serve as a strong proxy.

Apart from deference and legislative acquiescence, the INPRS interpretation is supported by consideration of the adverse consequences of reversing course now. Accepting petitioner's interpretation would require INPRS to recalculate the benefits of all disabled members, and possibly to collect overpayments to those whose benefits are reduced under petitioner's formula. According to INPRS counsel at the hearing, contributions to the 1977 Fund over the past two decades have been based on the experience of the fund in paying out benefits under the INPRS formula. If the benefit for most disabled members must be adjusted upward, there will be a resulting fiscal impact.

Finally, and perhaps most important in determining legislative intent, the INPRS interpretation of § 36-8-8-13.5 is the more fair and consistent application, because it results in a linear scale of additional benefits from 10% to 45%. Petitioner's interpretation, on the other hand, results in an additional benefit of 10% for those with a degree of impairment from zero to 9%; a benefit that slides from 10 to 45% with the member's degree of impairment; and a flat 45% additional benefit for those with a degree of impairment above 45%. It is difficult to imagine that the legislature intended such a potentially inequitable distribution of benefits to the fund's disabled members.

* * * * *

Finally, the principle of liberal construction in favor of members of the 1977 Fund is not persuasive. Liberal construction requires consideration of the impact of the statute on all members, not just a member who would fare better under a different interpretation. Here, petitioner's interpretation would result in a higher benefit for many disabled members of the fund, but a lower benefit for members with a degree of impairment less than 16%.

Id. at 82-85. The ALJ denied Fishburn's motion for summary judgment, granted INPRS's motion for summary judgment, and affirmed the Revised Determination that Fishburn's total monthly disability benefit payment from the 1977 Fund is 79.85% of the monthly salary of a first class patrol officer. Fishburn filed an objection to the ALJ's

7

recommended order, and on March 23, 2012, the Executive Director of INPRS issued a Final Order affirming the recommended order of the ALJ.

On April 25, 2012, Fishburn filed a verified petition for judicial review in the Marion Superior Court arguing that INPRS incorrectly interpreted and impermissibly applied Ind. Code § 36-8-8-13.5(f). On January 22, 2013, the trial court held a hearing at which the parties presented arguments.

On January 24, 2013, the court entered an Order on Petition for Judicial Review on Determination of Benefits which affirmed the action of INPRS. After noting INPRS's interpretation of Ind. Code § 36-8-8-13.5(f) and the interpretation sought by Fishburn, the court stated that, while the statute does not state the calculation is to be done using linear interpolation, the calculation offered by Fishburn is not described in the statute either. The court found:

> The legislature did clearly want to differentiate the award of additional benefits based upon degree of impairment. The legislature also clearly set a range for that additional benefit of 10% to 45%. What is not clear from the language of the statute is how those who fall between 0% and 100% degree of impairment should be calculated for their additional benefit. Nor is it clear that the legislature intended for all claimants with over a 45% degree of impairment would receive the maximum benefit. An ambiguous statute means that if the Court finds the agency interpretation is a reasonable one, absent a finding that the petitioner has been prejudiced in some way, this Court is required to affirm the agency's ruling. This Court finds that the agency interpretation, formula, calculation, and award of benefits are a reasonable interpretation of the relevant statute.

Id. at 155-156. Fishburn filed a motion to correct error, which after a hearing the court denied. He now appeals.

8

ISSUE AND STANDARD OF REVIEW

The issue is whether the ruling of the trial court is erroneous and must be reversed. The Administrative Orders and Procedures Act ("AOPA") limits judicial review of agency action. Huffman v. Office of Envtl. Adjudication, 811 N.E.2d 806, 809 (Ind. 2004). Agency action subject to AOPA will be reversed only if the court "determines that a person seeking judicial relief has been prejudiced by an agency action that is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." Id.; see Ind. Code § 4-21.5-5-14(d).

A trial court and an appellate court both review the decision of an administrative agency with the same standard of review. See St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cnty., 873 N.E.2d 598, 600 (Ind. 2007). In reviewing the decision of an administrative agency, we defer to the agency's expertise and will not reverse simply because we may have reached a different result. Filter Specialists, Inc. v. Brooks, 906 N.E.2d 835, 844 (Ind. 2009). "The burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity." Ind. Code § 4-21.5-5-14(a). "Review of an agency's decision is largely confined to the agency record, and the court may not substitute its judgment for that of the agency." Bd. of Comm'rs of LaPorte Cnty. v. Great Lakes Transfer, LLC, 888 N.E.2d 784, 788-789 (Ind. Ct. App. 2008) (internal quotations

9

omitted). We give deference to an administrative agency's findings of fact, if supported by substantial evidence, but review questions of law *de novo*. Id. (citing Huffman, 811 N.E.2d at 809). On review, we do not reweigh the evidence. Davidson v. City of Elkhart, 696 N.E.2d 58, 61 (Ind. Ct. App. 1998), trans. denied. Also, an administrative decision is arbitrary and capricious only when it is willful and unreasonable, without consideration or in disregard of the facts and circumstances of the case, or without some basis which could lead a reasonable person to the same conclusion. Indianapolis Downs, LLC v. Ind. Horse Racing Comm'n, 827 N.E.2d 162, 170 (Ind. Ct. App. 2005).

We observe that both parties requested summary judgment. Summary judgment may be granted in favor of either party in an administrative adjudication. "A party may, at any time after a matter is assigned to an administrative law judge, move for a summary judgment in the party's favor as to all or any part of the issues in a proceeding." Ind. Code § 4-21.5-3-23(a). "[A]n administrative law judge shall consider a motion filed under subsection (a) as would a court that is considering a motion for summary judgment filed under Trial Rule 56 of the Indiana Rules of Trial Procedure." Ind. Code § 4-21.5-3-23(b). Our standard of review for a grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Res., 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to designated materials. Id. We must carefully review a

10

decision on summary judgment to ensure that a party was not improperly denied its day in court. Id. at 974. The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Huntington v. Riggs, 862 N.E.2d 1263, 1266 (Ind. Ct. App. 2007), trans. denied.

The parties in this case do not dispute the facts and they agree that this appeal presents a pure question of law concerning the proper interpretation of the statutes relating to the 1977 Fund. See Mance v. Bd. of Dirs. of Pub. Employees' Ret. Fund, 652 N.E.2d 532, 534 (Ind. Ct. App. 1995) (noting the parties did not dispute the board's findings of fact and that the appeal presented a pure question of law concerning the construction of the judges' retirement system statutes), reh'g denied, trans. denied.

## DISCUSSION

In 1989, the legislature enacted statutory provisions, which became effective January 1, 1990, related to disability benefits which apply to members of the 1977 Fund.[5] An internal memorandum dated December 8, 1989, was prepared by PERF (now INPRS) establishing a formula for determining the additional monthly payment amount a member is entitled to under Ind. Code § 36-8-8-13.5(f). The memorandum provides in part:

> As you know, the new police and fire disability benefit schedule provides a benefit equal to a base benefit plus an additional benefit. This additional benefit ranges from 10% to 45% and is based upon the degree of impairment. In order to facilitate the implementation of this new disability system, please use the following formula when calculating the additional benefit based upon degree of impairment.
>
> Additional benefit percentage = (degree of impairment x .35) plus (10%).

---

[5] See Ind. Code §§ 36-8-8-12 to -13.7 (enacted pursuant to Pub. L. No. 311-1989 (eff. Jan. 1, 1990)).

This percentage was determined by equating the 100% degree impairment with the 45% maximum and 0% degree of impairment with the 10% minimum. The range between the degrees of impairment is 100 percent, and the range between the additional benefits are 35 percent. Thus, multiplying the degree of impairment by .35 yields the benefit percentage points equivalent to that degree of impairment. Add 10% for your minimum, and you have the additional benefit percentage.

Appellant's Appendix at 49. The benefit formula calculates the additional monthly benefit amount a disabled 1977 Fund member receives in addition to the base monthly benefit, and "is based upon a mathematical calculation called linear interpolation, which scales the member's degree of impairment to the range of minimum and maximum benefits allowable by statute (10% and 45%, respectively)." Id. at 48. This benefit formula has been uniformly applied to calculate the disability benefits of 1977 Fund members since the formula was established.

Fishburn applied for disability benefits with INPRS and was awarded a monthly disability benefit equal to 79.85% of the monthly salary of a first class patrol officer. He argues that his monthly benefit should be 10.15% higher, i.e., 90% of the monthly salary of a first class patrol officer, based on the language of Ind. Code § 36-8-8-13.5(f), which provides:

If a fund member is entitled to a monthly base benefit under subsection (b), (c), (d), or (e), the fund member is also entitled to a monthly amount that is no less than ten percent (10%) and no greater than forty-five percent (45%) of the monthly salary of a first class patrolman or firefighter in the year of the local board's determination of impairment. The additional monthly amount shall be determined by the Indiana public retirement system medical authority based on the degree of impairment.

Fishburn contends that his monthly disability benefit "should have been a simple calculation yielding 90% (45% base benefit + 71% degree of impairment = 116%

12

(capped at 90% per statute)." Appellant's Brief at 6. He asserts that Ind. Code § 36-8-8-13.5(f) is unambiguous and clearly does not contemplate the use of a benefit formula. He further argues that it was the legislature's intent to vest the medical authority only with the power to determine the additional monthly benefit and that, under INPRS's interpretation, the additional monthly amount is not determined by the medical authority but by a formula not authorized by statute. He contends that it is possible that his and INPRS's interpretations of the statute are deficient in some way and that the pension code should be liberally construed in favor of the intended beneficiaries. Fishburn also asserts that legislative acquiescence is useless as a tool of statutory construction considering that past administrative and judicial interpretations are few in number and not widely known.

INPRS argues that its interpretation of the statute is reasonable, that the statute is silent as to how INPRS's medical authority is to determine the additional monthly amount, and that its formula ensures that the same standard is used to calculate benefits so that individuals with the same degree of impairment receive the same benefit. INPRS further argues that it has used the formula since 1989 and that the Indiana Legislature has acquiesced in that interpretation for more than twenty-two years by not clarifying the statute or enacting a new method of calculating the additional monthly amount.[6]

---

[6] Fishburn also argues that the formula used by INPRS is a rule of implementation (as opposed to a rule of administration) and thus that INPRS was required to comply with the rulemaking provisions found at Ind. Code §§ 4-22-2 to promulgate the calculation as a rule. INPRS maintains that it has authority to interpret and implement requirements relating to disability benefits, that Fishburn waived his claim related to rulemaking by failing to raise it at the administrative level, and that in any event INPRS has broad authority to both administer and implement the statute at issue without adopting a rule as set forth in Ind. Code § 5-10.5-4-2. In his reply brief, Fishburn points to his brief in support of his motion for summary judgment before the ALJ and argues that he maintained that INPRS lacks statutory authority to implement the benefit formula it employs and thus did not waive the issue. The pages of his brief to which Fishburn cites present the argument that, by unilaterally employing the benefit formula to calculate the additional benefit, INPRS incorrectly interprets Ind. Code § 36-8-8-13.5(f) and exceeds its statutory

In interpreting a statute, our goal is to determine and give effect to the intent of the legislature. State v. Int'l Bus. Machs. Corp., 964 N.E.2d 206, 209 (Ind. 2012). We review an issue of statutory interpretation *de novo*. Chrysler Grp., LLC v. Review Bd. of Ind. Dep't of Workforce Dev., 960 N.E.2d 118, 124 (Ind. 2012). If the statutory language is clear and unambiguous, we require only that the words and phrases it contains are given their plain, ordinary, and usual meanings to determine and implement the legislature's intent. Id. (citing State v. Am. Family Voices, Inc., 898 N.E.2d 293 (Ind. 2008), reh'g denied). A statute is ambiguous, and open to judicial interpretation, where it is reasonably susceptible to more than one interpretation. Pub. Employees' Ret. Fund v. Shepherd, 733 N.E.2d 987, 989 (Ind. Ct. App. 2000), trans. denied. If a statute is ambiguous, we seek to ascertain and give effect to the intent of the legislature. Id. In doing so, we read the act as a whole and endeavor to give effect to all of the provisions. Id. at 989-990. We further presume that the legislature intended its language to be

authority. However, those pages of the brief before the ALJ do not present any specific argument that, in using its benefit calculation to make a determination of additional benefits, INPRS in effect established a rule which should have been promulgated under the rulemaking provisions of Ind. Code §§ 4-22-2. Also, the transcript of the administrative hearing is not in the record. To the extent Fishburn has not waived this argument, we note that Ind. Code §§ 4-22-2 governs the adoption of administrative rules under the Administrative Rules and Procedures Act. In addition, Ind. Code § 5-10.5-4-2 (previously found at Ind. Code § 5-10.3-3-8 and recodified by Pub. Law No. 23-2011 (eff. Jul. 1, 2011)) governs the powers of INPRS and provides in part, with respect to rulemaking, that "[t]he board may do any of the following: (1) Establish and amend rules and regulations: (A) for the administration and regulation of the fund and the board's affairs; and (B) to effectuate the powers and purposes of the board; *without adopting a rule under IC 4-22-2.*" (Emphasis added). Ind. Code § 5-10.5-4-3 provides that the "board's powers as specified in this article or the retirement law applicable to a public pension or retirement fund of the system: (1) shall be interpreted broadly to accomplish the purposes of this article or the applicable retirement law; and (2) may not be construed as a limitation of powers." The language of Ind. Code § 5-10.5-4-2 permitting INPRS to establish rules for the administration and regulation of the fund and INPRS's affairs and to effectuate the powers and purposes of the agency without undertaking a rulemaking action under Ind. Code §§ 4-22-2 encompasses and includes INPRS's action of calculating member additional benefits under Ind. Code § 36-8-8-13.5(f) or establishing a uniform manner or method of calculating the additional benefits consistent with its statutory obligations.

14

applied in a logical manner consistent with the underlying policy and goals of the statute. Id. at 990.

In addition, "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself." LTV Steel, Co. v. Griffen, 730 N.E.2d 1251, 1257 (Ind. 2000). In particular, we defer to the agency's reasonable interpretation of such a statute even over an equally reasonable interpretation by another party. Chrysler Group, 960 N.E.2d at 124.

We agree with the conclusions of the ALJ and the trial court that the statute provision above "arguably supports either of the competing interpretations advocated by the parties." See Shepherd, 733 N.E.2d at 990 (citations omitted); Mance, 652 N.E.2d at 536 (noting that both parties advanced plausible interpretations of the statute at issue). INPRS's interpretation of the statute is that it is not precluded from adopting a method or formula, such as the one it established in December 1989, to convert a member's degree of impairment, stated as percentage and as determined by the medical authority, into a monthly additional benefit payment, stated as a percentage of the monthly salary of a first class patrol officer within the 10% to 45% range set forth in the statute, using linear interpolation to provide proportionate additional benefits based on the member's degree of impairment from 0% to 100%. The interpretation advanced by Fishburn is that the statute does not permit the use of such a method and that a proper interpretation is that the additional benefit, stated as a percentage of the salary of a first class patrol officer, should be equal to the degree of impairment, stated as a percentage, of the member, but

15

that the amount would not be less than 10% or more than 45%. As noted by the ALJ and the trial court, neither of these interpretations is irreconcilable with the language of Ind. Code § 36-8-8-13.5(f). We therefore find the statute to be ambiguous and consequently in need of judicial interpretation.

Because the statute is susceptible to more than one interpretation, we look beyond the statute for legislative intent. Shepherd, 733 N.E.2d at 990. Although we are not bound by administrative interpretations, such interpretations often provide guidance into legislative intent. Id.

*INPRS's Interpretation of Ind. Code § 36-8-8-13.5(f) is Reasonable*

Where a statute is ambiguous, we defer to the agency's reasonable interpretation even over an equally reasonable interpretation by another party. Chrysler Group, 960 N.E.2d at 124. As the ALJ noted in its decision, "the statute says the [additional] benefit is '*based on*' rather than 'equal to' the degree of impairment." Appellant's Appendix at 82 (emphasis added). The legislature's use of the phrase "based on" strongly suggests that the additional benefit need not be an amount, expressed as a percentage, which is identical to the degree of impairment expressed as a percentage. The calculation used by INPRS in determining a member's additional benefit is indeed based on and is a function of the member's degree of impairment as required by Ind. Code § 36-8-8-13.5(f). Finally, the 1989 memorandum setting forth the agency's formula explained that "[t]his percentage was determined by equating the 100% degree impairment with the 45% maximum and 0% degree of impartment with the 10% minimum." Id. at 49. Thomas Parker, a legal benefits analyst with INPRS, stated in his affidavit that the benefit formula

16

"is based upon a mathematical calculation called linear interpolation,[7] which scales the member's degree of impairment to the range of minimum and maximum benefits allowable by statute (10% and 45%, respectively)." Id. at 48.

The formula-driven application used by INPRS results in a linear scale of additional benefits between 10% and 45% which, as a result, differentiates between those members with degrees of impairment from 0% to 100% as determined by the medical authority. The interpretation advanced by Fishburn would not differentiate between members with degrees of impairment of less than 10% or greater than 45%. If one of the legislature's goals is for all members to receive additional benefits proportionate or commensurate with their respective degrees of impairment as determined by the medical authority, then INPRS's interpretation of the statute and the result of using the method it established in 1989 accomplishes that goal. INPRS is charged with administering and implementing the statute, and thus its interpretation is given great weight. The manner of calculating additional benefits under Ind. Code § 36-8-8-13.5(f) as established by the agency, and as memorialized in December 1989 and applied consistently since that time, is consistent with the language of the statute and is a reasonable interpretation of the statute and its goals. We, accordingly, defer to INPRS's reasonable interpretation of the statute. See Chrysler Group, 960 N.E.2d at 124.

---

[7]"Linear interpolation" is defined as "estimation of a function (as a logarithm) by assuming that it is a straight line between known values." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/linear_interpolation (last visited December 11, 2013).

The 1989 memorandum explained: "The range between the degrees of impairment is 100 percent, and the range between the additional benefits are 35 percent. Thus, multiplying the degree of impairment by .35 yields the benefit percentage points equivalent to that degree of impairment. Add 10% for your minimum, and you have the additional benefit percentage." Appellant's Appendix at 49.

*Legislative Acquiescence*

The doctrine of legislative acquiescence further supports INPRS's interpretation of the statute. It is a rule of statutory construction that "'a long adhered to administrative interpretation dating from the legislative enactment, with no subsequent change having been made in the statute involved, raises a presumption of legislative acquiescence which is strongly persuasive upon the courts.'" Shepherd, 733 N.E.2d at 990 (citing Mance, 652 N.E.2d at 538 (quoting Ind. Dep't of Revenue v. Glendale-Glenbrook Assocs., 429 N.E.2d 217, 219 (Ind. 1981))).

In Shepherd, the PERF Board and the State challenged the trial court's ruling in favor of certain State officers that Ind. Code § 5-10-5.5-10(b) required the PERF Board to add to an officer's retirement allowance two and two-thirds percent of an officer's average annual salary for each year of an officer's service over twenty-five years. 733 N.E.2d at 988. This court found that the statute at issue was ambiguous and that the doctrine of legislative acquiescence applied to the case. Id. at 990. We noted that the General Assembly had not changed the statute since the Plan's origin, that since that time the PERF Board had implemented the Plan by adding one percent of an officer's average annual salary for each year of service over twenty-five years, and that the PERF Board had never interpreted the statute to allow the two and two-thirds percent increase for each year of service in excess of twenty-five years. Id. We held that, accordingly, based upon the General Assembly's inaction in the face of the PERF's Board implementation of the Plan, "a presumption arises that the General Assembly has acquiesced in the PERF Board's interpretation." Id. As a result of the legislature's deemed acquiescence, we

18

concluded that "we must presume that the PERF Board's construction was the meaning intended by the legislature." Id.

In Mance, the court noted that in 1977 the legislature amended the judges' retirement system statutes and adopted the statutory definition of salary at issue in the case, that since that time the board had determined that contributions and benefits shall be based solely on the statutory minimum salary and not also on the voluntary county supplement some judges are paid, and that the board adopted that interpretation at a meeting. 652 N.E.2d at 538. The court noted that the legislature had not amended the definition of "salary" used in the judges' retirement system statutes during the time the board had interpreted that term to exclude the county supplement. Id. The court held that, accordingly, the legislature was deemed to have acquiesced in the board's construction of the retirement system statutes and that this court must presume that the board's construction was the meaning intended by the legislature. Id. See also Glendale-Glenbrook Assocs., 429 N.E.2d at 219-220 (holding that the doctrine of legislative acquiescence was clearly applicable to the case, that the department of revenue originally found that Glendale was not liable for payment of a gross income tax under Ind. Code § 6-3-7-1(b), that no payments were assessed to Glendale for a seven-year period during 1969-1975, that the legislature took no action during this period to amend the statute and therefore must be deemed to have acquiesced in the exemption, and that such acquiescence was binding and controlling in the case); Marion Teachers Ass'n v. Bd. of Sch. Trustees of Marion Cmty. Sch. Corp., 643 N.E.2d 370, 374 (Ind. Ct. App. 1994) (noting that the Indiana Education Employment Relations Board was entitled to

deference in its interpretation of the statutes under which it operates, citing Glendale-Glenbrook Assocs., and holding that the doctrine of legislative acquiescence was clearly applicable to the case), summarily affirmed, 672 N.E.2d 1363 (Ind. 1996).

Based on Shepherd and Mance, we find that the doctrine of legislative acquiescence provides further support for affirming the trial court's ruling. INPRS established the method of calculating additional benefits under Ind. Code § 36-8-8-13.5(f) in December 1989 and has applied that method since that time. The General Assembly has not clarified the manner INPRS calculates the additional benefit under Ind. Code § 36-8-8-13.5(f) or provided a different method of calculating the additional monthly benefit since then. Based upon the General Assembly's inaction in the face of the INPRS's interpretation of Ind. Code § 36-8-8-13.5(f), the General Assembly is deemed to have acquiesced in INPRS's interpretation of the disability benefit statutes and we must presume that INPRS's interpretation was the meaning intended by the General Assembly.

Also, we presume that the General Assembly intended its language to be applied in a logical manner consistent with the underlying policy and goals of the statute. Shepherd, 733 N.E.2d at 990. Over the last twenty-two years, police officers and firefighters who were members of and entitled to disability benefit payments from the 1977 Fund received additional benefit payments which were calculated in the same manner Fishburn's benefit was calculated. The trial court did not err in its determination.

20

CONCLUSION

For the foregoing reasons, the trial court's order affirming INPRS's determination of Fishburn's additional benefit under Ind. Code § 36-8-8-13.5(f) is not erroneous and we affirm the court's ruling.

Affirmed.

BARNES, J., concurs.

ROBB, J., concurs with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JASON A. FISHBURN,     )
                                 )
      Appellant,       )
                                 )
        vs.          )     No. 49A02-1305-MI-391
                                 )
INDIANA PUBLIC RETIREMENT   )
SYSTEM,                    )
                                 )
      Appellee.        )

**ROBB, Judge, concurring**

I concur in the majority opinion. However, I write separately to point out that what Fishburn characterizes as a "benefit formula" not authorized by statute, <u>see</u> Brief of the Appellant at 9, is in fact just a straightforward mathematical computation to determine where any given impairment rating falls on the continuum set by the legislature in section 36-8-8-13.5(f). In other words, the statute allows an additional monthly benefit on a scale from 10% to 45% based on an impairment rating from 1% to 100% and INPRS's memo does not <u>establish</u> a formula but simply <u>describes</u> the mathematical method of determining that correlation.