

**ATTORNEYS FOR APPELLANT**

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

**ATTORNEY FOR APPELLEE**

Arend J. Abel
Cohen & Malad, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

The Commissioner of the
Indiana Department of
Insurance,

*Appellant*,

v.

Jeffrey A. Schumaker,

*Appellee*.

December 31, 2018

Court of Appeals Case No.
18A-MI-864

Appeal from the Marion Superior
Court

The Honorable Patrick J. Dietrick,
Judge

Trial Court Cause No.
49D12-1703-MI-11747

**Brown, Judge.**

[1]     The Commissioner (the "Commissioner") for the Indiana Department of Insurance (the "Department") appeals the trial court's order vacating its decision to not renew Jeffrey A. Schumaker's insurance producer license. We affirm.

*Facts and Procedural History*

[2]     Schumaker has held an insurance producer license since 1990 and concentrates his business in life, health, disability, and Medicare supplement insurance. He also held a license with the Financial Industry Regulatory Authority ("FINRA") permitting him to sell securities. In 2011, Mr. Schumaker experienced financial difficulties[1] and took $8,300 from his homeowners association, for which he volunteered as the treasurer. In March 2014, Schumaker repaid the money he had taken from the homeowners association along with two years of dues he owed and one year of future dues. He disclosed his actions to the homeowners association and resigned as treasurer, and the association elected not to pursue charges. Schumaker reported his actions to his broker-dealer, the broker-dealer in turn communicated with FINRA, and Schumaker elected not to challenge the suspension issued by FINRA. Schumaker believed FINRA communicated with the Commissioner,

---

[1] Schumaker indicated he had been in an accident and was being sued and that a large medical bill had come due.

and when completing his license renewal application, he disclosed his FINRA bar.[2]

[3] On August 12, 2016, the Commissioner issued an Administrative Order Notice of Nonrenewal of License which stated the enforcement division of the Department received untimely notification of Schumaker's securities license suspension and permanent bar, stated Schumaker had disclosed that he misappropriated funds for personal use as treasurer of his homeowners association, cited Ind. Code § 27-1-15.6-17(a)[3] and Ind. Code § 27-1-15.6-12(b)(8),[4] and stated that Schumaker's producer license would not be renewed.

_____

[2] The administrative record contains a letter by Lincoln Financial Group dated April 25, 2016, to the Department stating that it requested an appointment termination for Schumaker as a result of his permanent bar by FINRA. An employee of the Department testified that the Department received the letter and sent a communication to Schumaker which was returned because it was addressed incorrectly and that, on the day the communication came back through the mail, the employee received Schumaker's renewal application from the licensing division.

[3] Ind. Code § 27-1-15.6-17(a) provides "[a] producer shall report to the commissioner any administrative action taken against the producer in another jurisdiction or by another governmental agency in Indiana not more than thirty (30) days after the final disposition of the matter."

[4] Ind. Code § 27-1-15.6-12(b) provides in part:

> The commissioner may reprimand, levy a civil penalty, place an insurance producer on probation, suspend an insurance producer's license, revoke an insurance producer's license for a period of years, permanently revoke an insurance producer's license, or refuse to issue or renew an insurance producer license, or take any combination of these actions, for any of the following causes:
>
> > (1) Providing incorrect, misleading, incomplete, or materially untrue information in a license application.
> >
> > * * * * *
> >
> > (8) Using fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in Indiana or elsewhere.

At Schumaker's request, a hearing was scheduled before an administrative law judge (the "ALJ").

[4] On September 14, 2016, the ALJ held a hearing. In November 2016, the ALJ issued Findings of Fact, Conclusions of Law and Order. The ALJ found, "[i]n response to Question 2, of his application for renewal to [the Department] Schumaker made a full and complete disclosure of the FINRA bar and the circumstances leading thereto."[5] Appellant's Appendix Volume II at 35. The ALJ found that no evidence was presented that Schumaker has ever committed any conduct that is fraudulent, coercive, dishonest, incompetent, untrustworthy, or financially irresponsible in the conduct of his insurance business or any other business venture. The ALJ also found "the evidence in this case demonstrates that Schumaker took $8300 from the homeowners' association bank account with the intent to repay it" and "[w]hile dishonest, all evidence presented at the hearing was that this was a singular issue, out of character for Schumaker, and not part of a pattern of deceit or a series of 'practices' in either his personal or professional life." *Id.* at 37. The ALJ recommended that the order of nonrenewal be reversed on the conditions that Schumaker's license be granted on a two-year probationary basis and that he pay a civil penalty of $1,000.

---

[5] The ALJ indicated that Question 2 stated: "Have you been named or involved as a party in an administrative proceeding, including a FINRA sanction or arbitration proceeding regarding any professional or occupational license or registration, which has not been previously reported to this insurance department?" Appellant's Appendix Volume II at 31.

[5] On February 20, 2017, the Commissioner issued Findings of Fact, Conclusions of Law, and Final Order. The Commissioner stated that the Department filed an objection to the ALJ's recommended order and challenged, in relevant part, the ALJ's conclusions relating to Ind. Code § 27-1-15.6-12(b)(8). The Commissioner found that Schumaker violated subsections (1) and (8) of Ind. Code § 27-1-15.6-12(b) and ordered that his insurance producer license not be renewed.

[6] On March 22, 2017, Schumaker filed a petition for judicial review with the trial court. The parties submitted briefs[6] and on February 1, 2018, the court held argument. On March 19, 2018, it issued its Findings of Fact,[7] Conclusions of Law and Order which vacated the Commissioner's February 20, 2017 order and provided:

### Findings of Fact

> 1. Mr. Schumaker concentrates his business in life and health insurance, disability and Medicare supplement insurance. Ex. 5. In his insurance business, Mr. Schumaker does not handle any cash for insureds. Tr. 35. Instead, the insured pays all premiums directly to the insurance company. *Id.* The only funds Mr. Schumaker deals with are his own commission checks from which he pays his salary and his office expenses. *Id.*

---

[6] Schumaker argued that FINRA is not a governmental agency but an independent, non-for-profit organization and that the FINRA action was not an administrative action which was required to be disclosed under Ind. Code § 27-1-15.6-17(a). The Commissioner replied that FINRA actions "are precisely the types of sanctions the Department needs to know about." Appellant's Appendix Volume II at 69.

[7] The parties do not challenge the factual findings.

2. At the time of the administrative hearing, Mr. Schumaker had held a license from the Department for 26 years and was serving about 300 customers. Ex. 5. He has never [had] a complaint relating to [the] manner in which he conducted his business. *Id.*

3. Mr. Schumaker also served as treasurer of his homeowners' association, an unpaid, volunteer position that was neither elected nor appointed. Mr. Schumaker held the position because the association needed volunteers for various positions due to its small size. Tr. 24-25.

4. In 2011, Mr. Schumaker experienced significant personal issues. At a school sporting event on a rainy evening, two young girls ran out in front of his car and, because one stopped and the other ran, Mr. Schumaker could not avoid hitting one of them and injuring her. Tr. 16. The accident exacted a heavy emotional toll on Mr. Schumaker and his family. Tr. 16, Tr. 55. It also had a big impact on his business. Tr. 16. In addition to the emotional turmoil the event caused, Mr. Schumaker incurred expenses because he was sued over the accident. *Id*; Ex. 5.

5. Mr. Schumaker was expecting a substantial commission check and wrote an equally substantial check to pay a medical bill. Tr. 17. When the commission check did not arrive, Mr. Schumaker took $8300 in homeowner's association funds for his own use, without authorization. Tr. 41. He always intended to pay the money back, and no one with the homeowners' association discovered his actions. TR. 17; Ex. 5.

6. In 2014, the homeowners' association had bills coming due and needed funds. Tr. 18. Mr. Schumaker returned the funds he had taken, depositing $9000, which included the $8300 and his own dues. Tr. 19-20. He disclosed to the association what he had done and how he had corrected it. Tr. 22. He also resigned as treasurer. *Id.*

7. After hearing Mr. Schumaker's disclosures, the other members of the homeowners' association deliberated. *Id.* Tom Mack, a neighbor who was present when Mr. Schumaker told the homeowners what he had done, noted that Mr. Schumaker was

very remorseful. Ex. 2. Mr. Mack and the other home owners concluded Mr. Schumaker made a bad decision, but that because he informed them, repaid the funds, and was being investigated at work, they would not pursue charges. Tr. 22; Ex. 2. According to Mr. Mack "Jeff is a very reliable, honest and kind person that had made a bad choice." Ex. 2. Mr. Schumaker's wife testified how out of character the actions were for her husband, describing them as "an aberration." Tr. 56.

8. One association member was a former registered representative (a person who buys or sells securities for a registered broker-dealer) and said Mr. Schumaker should report the incident to his broker-dealer, so he did. Tr. 24-25. The broker-dealer reported the incident to the Financial Industry Regulatory Authority, also known as FINRA, a private self-regulatory entity in the securities business. Tr. 25.

9. FINRA began an investigation, which its attorneys pursued aggressively. Tr. 27. Mr. Schumaker learned that even if [he] avoided being barred from association with FINRA, the process would be expensive. *Id*. He heard from one individual who spent approximately $100,000.00 in attorneys' fees, costs, and fines. *Id*. Accordingly, Mr. Schumaker did not contest or otherwise participate in the investigation. Ex. 5. Under FINRA' rules, non-participation leads to a bar against further association with FINRA. *Id*. FINRA's attorneys and his own counsel assured him he could continue in his insurance business, he just could no longer sell securities. Tr. 27-28.

10. After Mr. Schumaker could no longer serve his broker/dealer clients, another registered representative, William Novack began serving them. Tr. 50. Novack testified Mr. Schumaker's clients "spoke very highly of him." *Id*. Novack further testified to his own assessment that Mr. Schumaker "did quite well" and "did a very nice job in putting things together for his clients." *Id*. Novack also testified Mr. Schumaker's clients could be negatively affected if Mr. Schumaker could not assist them with their insurance needs. *Id*. at 51.

11. Mr. Schumaker did not know he was supposed to disclose the FINRA bar to the Department until he was in the process of renewing his producer's license. Tr. 31. Question 2 of the application asked "Have you been named or involved as a party in an administrative proceeding, including a FINRA sanction or arbitration proceeding regarding any professional or occupational license or registration, which has not been previously reported to this insurance department?" Filing No. 10 (ALJ's Order) p. 2, ¶ 3. Mr. Schumaker disclosed the FINRA bar and the circumstances leading to it. Ex. 1.

12. On August 12, 2016, the Department notified Mr. Schumaker his license would not be renewed in an "Administrative Order — Notice of Nonrenewal of License." Record Doc. 16. The reasons given for the non-renewal were that Mr. Schumaker failed to report the FINRA suspension within 30 days of its final disposition and that he allegedly used "fraudulent, coercive, or dishonest practices, or demonstrate[d] incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in Indiana or elsewhere," which Ind. Code § 27-1-15.6-12(b)(8) lists as a basis for discipline. *Id*.

13. Mr. Schumaker timely sought administrative review.

14. Mr. Schumaker acknowledged his personal use of association funds was wrong, but stated the events were caused by extreme circumstances not likely to recur and had no relationship to his blemish-free, 26-year record in providing services under his Indiana insurance producer's license. He denied the conduct amounted to "fraudulent, coercive, or dishonest practices, or demonstrate[d] incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in Indiana or elsewhere" within the meaning of Ind. Code § 27-1-15.6-12(b)(8).

15. Mr. Schumaker further argued it was arbitrary and capricious to refuse to renew his insurance producer's [license] based on the belated disclosure of the FINRA action.

16. Mr. Schumaker's Indiana producer's license expired on June 30, 2016, while his application was pending. Record Doc. 16 (Administrative Order - Notice of Nonrenewal) ¶ 2.

17. The Honorable Reuben B. Hill, Administrative Law Judge, held an evidentiary hearing. Mr. Schumaker presented his own testimony, his wife's, and that of the homeowner and registered representative described above. He also presented evidence of his most recent Field Office Review Worksheet and a post-audit letter stating, "Congratulations! I would like to commend you on how well you have been managing the affairs of your branch office. I am pleased to inform you that there were no material exceptions found during the audit of your branch office. This is a great accomplishment and a direct reflection of your commitment to excellence." Ex. 3. Mr. Schumaker also testified he has made changes to his business to avoid the extreme financial pressures that led to his actions. Tr. 36-37.

18. Mr. Schumaker is the sole financial supporter for his family, which includes his wife, two sons in college, his mother-in-law who lives with him, and a young family member placed in their home by family services. Tr. 11-12; Tr. 53. Losing his producer income would be devastating to the family, Ex. 5; And, at age 53 with 26 years in the insurance industry, Mr. Schumaker does not know what he would do to replace that income. Ex. 5; see also Tr. 37.

19. At the hearing, the Department took the position that the statutory term "fraudulent, coercive, or dishonest practices" was not modified by the closing phrase "in the conduct of business in Indiana or elsewhere." In other words, the department took the position that Ind. Code § 27-1-15.6-12(b)(8) provided two separate bases for discipline:

> (A) fraudulent, coercive, or dishonest practices; or
>
> (B) incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in Indiana or elsewhere.

Filing No. 10 (ALJ's Order), Conclusion ¶ 7.

20. In his conclusions of law, ALJ Hill noted, but did not resolve the different interpretations urged by the parties. *Id*., Conclusion ¶ 6-7. Instead, he found that "all evidence presented at the hearing was that [Mr. Schumaker's conduct] was a singular issue, out of character for Schumaker, and not part of a pattern of deceit or a series of 'practices' in either his personal or professional life." *Id*. Conclusion ¶ 8. For the late reporting of the FINRA proceeding, ALJ Hill recommended that "the order of nonrenewal be reversed under the following conditions:

> 1. Applicant's independent adjuster's license shall be granted on a two year probationary basis, during which time, Applicant shall adhere to all insurance laws or the Department will seek immediate revocation of his license.
>
> 2. Applicant shall pay the sum of One Thousand Dollars ($1,000.00) civil penalty in accordance with Indiana Code 27-1-28-18 (e)."

*Id*. at p.9.

21. The Department sought review of ALJ Hill's Order, arguing its interpretation of the statute to the Commissioner and asking for a review of ALJ Hill's finding concerning the payment of interest. Filing No. 9. The Commissioner agreed with the Department on both issues. Concerning the statutory interpretation issue, the Commissioner concluded:

> The term 'in the conduct of business in Indiana or elsewhere,' when used in Ind. Code § 27-1-15.6-12(b)(8), should not be read in conjunction with the terms 'fraudulent, coercive, or dishonest practices.' Ind. Code § 27-1-l5.6-12(b)(8) provides the Commissioner the authority to take administrative action when a producer uses fraudulent, coercive, or dishonest practices in any event, whether in the conduct of business in Indiana or not.

Filing No. 4 (Commissioner's Final Order of Nonrenewal) ¶ 12. The Commissioner did not address the ALJ's conclusion that a single instance of misconduct did not amount to "practices." Nor

did the Commissioner find that any of Mr. Schumaker's conduct occurred "in the conduct of business." The Commissioner concluded that "The appropriate penalty for such a violation is refusal to renew the license." *Id.*

22. As a factual matter, the administrative record in this case establishes the following:

> 1. The ALJ ruled Mr. Schumaker had not engaged in fraudulent, coercive, or dishonest practices, or even one such practice, but a single isolated instance of dishonesty.
>
> 2. The Commissioner made no contrary finding, nor would the evidence support a contrary finding.
>
> 3. Neither the Commissioner nor the ALJ made any finding on the appropriateness of the sanction if the Division could not establish Mr. Schumaker engaged in fraudulent, coercive, or dishonest practices, but established Mr. Schumaker violated a technical reporting requirement by voluntarily disclosing the FINRA action on his next renewal application, rather than within 30 days.

Conclusions of Law

1. The ALJ ruled Mr. Schumaker did not engage in fraudulent, coercive or dishonest practices, whether in the conduct of business or otherwise. Filing No. 10 (ALJ's Order), Concl. ¶ 8. According to the ALJ, "all evidence presented at the hearing was that this was a singular issue, out of character for Mr. Schumaker, and not part of a pattern of deceit or a series of 'practices' in either his personal or professional life." *Id.* The Commissioner did not find otherwise.

2. Thus, as the record stands, neither the ALJ nor the Commissioner found a violation of Ind. Code § 27-1-15-6-12(b)(8). The Court owes no deference to the arguments the Commissioner's lawyers make that the record is sufficient to show a violation. Instead, the Court owes deference to the ALJ's finding that no violation of that statute occurred and the Commissioner made no contrary finding.

3.  Because neither the ALJ nor the Commissioner found that Mr. Schumaker engaged in "fraudulent, coercive or dishonest practices," whether in the conduct of business or otherwise, this Court need not decide whether a connection to Mr. Schumaker's business was required.  Rather, the fact that, as the ALJ found, Mr. Schumaker's conduct was a single instance of dishonesty, rather than "practices," means that the statutory language is not met.

4.  In addition, the Court finds the Commissioner's reading of the statute implausible.  If any dishonest "practice" were a sufficient basis for the Commissioner to take action against a licensee, then the statute would also sweep in a wide variety of socially and personally "dishonest" conduct, such as cheating at golf or in card games.  Nothing in the statutory text suggests such a broad reading.

5.  Reading the statute to reach isolated instances of dishonesty would also render meaningless other subsections of the same statute.  Subsection (b)(4), for example, authorizes the Commissioner to discipline a licensee for "Improperly withholding, misappropriating, or converting any monies or properties received in the course of doing insurance business." Ind. Code § 27-1-15.6-12 (b)(4).  If a single instance of misappropriation, whether inside or outside the insurance business, violates subsection (b)(8), then subsection (b)(4) becomes meaningless.

6.  A Court must give effect "to all of the provisions and words of a statute where it is possible." *Read v. Beczkiewicz*, 215 Ind. 365, 382, 18 N.E.2d 789, 796, *reh'g denied* 19 N.E.2d 465 (1939).  Our Supreme Court recently reaffirmed that rule multiple times: "No word or part of the statute should be rendered meaningless if it can be reconciled with the rest of the statute. *Indiana Alcohol & Tobacco Commission v. Spirited Sales, LLC*, 79 N.E.3d 371, 376 (Ind. 2017) (citing *West v. Indiana Secretary of State*, 54 N.E.3d 349, 353 (Ind. 2016), which in turn cited *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 828 (Ind. 2011)).

7.  Here, reconciling the statutory provisions gives meaning to the General Assembly's decision that a single misappropriation *in the insurance business* is sufficient basis for action against a license in

paragraph (b)(4), and that repeated misappropriations that become "practices" need not occur in that context, but only in any kind of business, to provide a ground for discipline under paragraph (b)(8). But there is not any portion of the statute that makes a single, isolated act, not occurring in the insurance business, a ground for discipline.

8. The Commissioner relies heavily on the notion that the Court must afford deference to the agency's interpretation of the statute, but even the case the Commissioner cites, *Jay Classroom Teachers Ass'n v. Jay School Corp.*, 55 N.E.3d 813 (Ind. 2016), holds that "we review an agency's conclusions of law de novo." *Id.* at 816 (Ind. 2016); *see also Indiana Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 375 (Ind. 2017); 813; *Moriarity v. Department of Natural Resources*, 2018 WL 828492, at *3 (Ind. Ct. App. Feb. 13, 2018). [8]

9. Deference is only appropriate when an agency's interpretation of an ambiguous statute is reasonable. *State v. Mills*, 76 N.E.3d 861, 870 (Ind. Ct. App. 2017). Here, the Commissioner's interpretation, which would apply the statute to isolated, non-business acts of dishonesty, such as cheating at cards or golf, and which would render Ind. Code § 27-1-15.6-12(b)(4) completely meaningless, is not reasonable. Accordingly, the Commissioner's Order must be vacated.

10. The appropriate remedy in this case is not, however, simply a remand. There is no dispute what the facts are or any suggestion that they could be found differently on remand. Once the Commissioner's erroneous reliance on Ind. Code § 27-1-15.6-12(b)(8) is removed, all that is left of the case is an inadvertent failure to report the FINRA suspension, which was voluntarily reported, unprompted, on the next renewal application.

---

[8] The Indiana Supreme Court granted transfer in *Moriarity* on May 24, 2018, after the trial court issued its order. *See Moriarity v. Ind. Dep't of Nat. Res.*, 102 N.E.3d 288 (Ind. 2018).

11.  It would be unreasonable, and an abuse of discretion, to deny the renewal of Mr. Schumaker's license based on tardiness alone, particularly when that tardiness was inadvertent.

12.  At the hearing, Mr. Schumaker's lawyer suggested that the appropriate remedy would be for the Court to order Mr. Schumaker's license renewed, in accordance with the ALJ's proposed order.  Unfortunately, the Court cannot order such relief and must remand to the Commissioner under *Indiana State Bd. of Health Facility Adm'rs v. Werner*, 841 N.E.2d 1196 (Ind. Ct. App. [(2006)]), decision clarified on reh'g, 846 N.E.2d 669 (Ind. Ct. App. 2006).

13.  While the Court has held that Mr. Schumaker did not engage in "fraudulent, coercive or dishonest practices" under the statute, and has further found that non-renewal is too harsh a sanction, the Commissioner has other remedies he can impose.  For example, the Commissioner can "reprimand, levy a civil penalty, [or] place an insurance producer on probation. . ."  Ind. Code § 27-1-15.6-12(b). Other statutory sanctions, such as a revocation or suspension are either inapplicable in the circumstance where a producer does not have a current license or are, like non-renewal, too harsh for a minor reporting violation.  Nevertheless, the Commissioner must be afforded an opportunity to determine whether to reprimand Mr. Schumaker or place him on probation and whether to impose a civil penalty.  That choice belongs to the Commissioner on remand.

### Entry of Judgement

For the reasons stated above, the Petition for Judicial Review is GRANTED and this matter is REMANDED for consideration of the appropriate penalty short of non-renewal.

Appellant's Appendix Volume II at 7-17.  The Commissioner appeals.

### *Discussion*

[7] The issue is whether the trial court erred in vacating the Commissioner's February 20, 2017 order and remanding for consideration of the appropriate penalty. Agency action subject to the Administrative Orders and Procedures Act will be reversed only if the court determines that a person seeking judicial relief has been prejudiced by an agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; or unsupported by substantial evidence. *Fishburn v. Ind. Pub. Ret. Sys.*, 2 N.E.3d 814, 821 (Ind. Ct. App. 2014), *trans. denied*; *see* Ind. Code § 4-21.5-5-14(d). A trial court and an appellate court both review the decision of an administrative agency with the same standard of review. *Fishburn*, 2 N.E.3d at 821. The burden of demonstrating the invalidity of agency action is on the party to the judicial review proceeding asserting invalidity. *Id.*; Ind. Code § 4-21.5-5-14(a). We give deference to an administrative agency's findings of fact, if supported by substantial evidence, but review questions of law *de novo*. *Fishburn*, 2 N.E.3d at 821. *See LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind. 2000) ("While an appellate court grants deference to the administrative agency's findings of fact, no such deference is accorded to the agency's conclusions of law.").

[8] To the extent we must interpret statutory language, our goal is to determine and give effect to the intent of the legislature. *Fishburn*, 2 N.E.3d at 824. We review

an issue of statutory interpretation *de novo*. *Id.* If the statutory language is clear and unambiguous, we require only that the words and phrases it contains are given their plain, ordinary, and usual meanings to determine and implement the legislature's intent. *Id.* If a statute is ambiguous, we seek to ascertain and give effect to the intent of the legislature. *Id.* In doing so, we read the act as a whole and endeavor to give effect to all of the provisions. *Id.* Deference to an agency's interpretation of a statute becomes a consideration when a statute is ambiguous and susceptible to more than one reasonable interpretation, and an agency's incorrect interpretation of a statute is entitled to no weight. *Ind. Horse Racing Comm'n v. Martin*, 990 N.E.2d 498, 503 (Ind. Ct. App. 2013) (citations omitted).

[9]  Ind. Code §§ 27-1-15.6 govern the qualifications and procedures for the licensing of insurance producers. Ind. Code § 27-1-15.6-1. An insurance producer is a person required to be licensed under the laws of Indiana to sell, solicit, or negotiate insurance. Ind. Code § 27-1-15.6-2.

[10]  Ind. Code § 27-1-15.6-12(b) provides:

> The commissioner may reprimand, levy a civil penalty, place an insurance producer on probation, suspend an insurance producer's license, revoke an insurance producer's license for a period of years, permanently revoke an insurance producer's license, or refuse to issue or renew an insurance producer license, or take any combination of these actions, for any of the following causes:
>
> > (1) Providing incorrect, misleading, incomplete, or materially untrue information in a license application.

(2) Violating:

    (A) an insurance law;

    (B) a regulation;

    (C) a subpoena of an insurance commissioner; or

    (D) an order of an insurance commissioner;

of Indiana or of another state.

\* \* \* \* \*

(4) Improperly withholding, misappropriating, or converting any monies or properties received in the course of doing insurance business.

\* \* \* \* \*

(8) Using fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in Indiana or elsewhere.

[11] Ind. Code § 27-1-15.6-17(a) provides:

A producer shall report to the commissioner any administrative action taken against the producer in another jurisdiction or by another governmental agency in Indiana not more than thirty (30) days after the final disposition of the matter. The report shall include a copy of the order, consent to order, or other relevant legal documents.

[12] The Commissioner asserts that the phrase "in the conduct of business" does not apply to "fraudulent, coercive, or dishonest practices" in Ind. Code § 27-1-15.6-12(b)(8) and that the statute does not apply solely to the conduct of business. The Commissioner argues that the statute applies to a single incident of

dishonesty and that the use of the phrase "fraudulent, coercive, or dishonest practices" demonstrates that the use of "practices" refers to more than one type of misconduct. The Commissioner further argues that the decision to not renew Schumaker's license was justified given his failure to disclose the FINRA action. The Commissioner also argues that the sanction of nonrenewal was reasonable and points to Schumaker's decision to take $8,300 and the resulting FINRA bar which he failed to timely disclose to the Department.

[13] Schumaker maintains that the Commissioner's interpretation of Ind. Code § 27-1-15.6-12(b)(8) is not reasonable and that the absence of any finding or evidence that his actions were taken in the conduct of business is fatal to the Commissioner's conclusion. He further maintains that a single instance of dishonesty does not constitute "practices" under subsection (8) and that the legislature could easily have used language to specify that a single act could result in discipline but chose instead to use plural terms and terms that require regularity in the conduct. He also argues that it is unreasonable to deny his renewal based on an inadvertent failure to report the results of the FINRA action within thirty days.

[14] Ind. Code § 27-1-15.6-12(b)(8) provides the Commissioner may take action with respect to a producer's license for the causes of "[u]sing fraudulent, coercive, or dishonest practices, or demonstrating incompetence, untrustworthiness, or financial irresponsibility in the conduct of business in Indiana or elsewhere." The ALJ found, and the Commissioner does not dispute, that Schumaker's action of taking funds from his homeowners association did not occur "in the

conduct of business." Thus, the subsection is inapplicable in this case to the extent the phrase "in the conduct of business" modifies each of the causes listed in subsection (8). Even assuming the phrase "in the conduct of business" does not modify the phrase "[u]sing fraudulent, coercive, or dishonest practices," we note that the ALJ found as noted by the trial court that Schumaker "took $8300 from the homeowners' association bank account with the intent to repay it" and that, "[w]hile dishonest, all evidence presented at the hearing was that this was a singular issue, out of character for Schumaker, and not part of a pattern of deceit or a series of 'practices' in either his personal or professional life." Appellant's Appendix Volume II at 37. The evidence supports the conclusion that Schumaker's action of taking money from his homeowners association, under the specific circumstances of this case as set forth in the administrative record, did not constitute "practices" in Schumaker's professional or personal life which warrant the severe sanction of refusal to renew his insurance producer license.

[15] Also, the ALJ found that Schumaker "made a full and complete disclosure of the FINRA bar and the circumstances leading thereto" in his application for renewal, and the Commissioner, in its decision, adopted this finding and noted that the Department's objection to the ALJ's recommended order challenged in relevant part the ALJ's conclusions related to subsection (8), not subsection (1), of Ind. Code § 27-1-15.6-12(b). *Id.* at 35. To the extent that he did not timely

report the FINRA action to the Department and was required to do so,[9] Schumaker testified that, because he was going through everything with FINRA, he assumed FINRA shared all of that information with the Commissioner, that he did not realize that was something he needed to do as well, and that as soon as he went online to complete his renewal he provided an explanation for what had happened. We agree that any delay does not merit the strict sanction of nonrenewal of Schumaker's license. We do not disturb the trial court's ruling.

[16] For the foregoing reasons, we affirm the order of the trial court.

[17] Affirmed.

Altice, J., and Tavitas, J., concur.

---

[9] As previously noted, Ind. Code § 27-1-15.6-17(a) requires a producer to report an administrative action against the producer "in another jurisdiction" within thirty days.